Gineton ALENCAR, Appellant,

v.

Robert T. SHAW, Leisurecorp, Inc., and Trupetro, L.P., Appellees.

No. 05–09–01262–CV.

Court of Appeals of Texas, Dallas.

Aug. 10, 2010.

Daniel G. Rogers, Ferguson Davis, P.C., Dallas, TX, for Appellant.

Todd R. Hixon, Haakon T. Donnelly, Beltinger & DeWolf, LLP, C. Bruce Willis, II, Dallas, TX, for Appellees.

Before Justices MARTIN RICHTER, LANG–MIERS, and MYERS.

## OPINION

Opinion By Justice LANG–MIERS.

This is an interlocutory appeal from the trial court's order denying appellant Gineton Alencar's special appearance. We affirm the trial court's order.

### BACKGROUND

Robert T. Shaw, Leisurecorp, Inc., and TruPetro, L.P. sued Alencar, a Florida resident, and others alleging that defendants made material misrepresentations in connection with a business venture in Brazil, namely, a naphtha refinery known as the Rafard Facility. Plaintiffs alleged that defendants initially induced Shaw and Leisurecorp to invest approximately $6 million and to become limited partners in TruPetro, and later induced all plaintiffs to invest more money in the Rafard Facility. Plaintiffs asserted multiple claims against all defendants, including claims for fraud and negligent misrepresentation. Shaw also asserted a claim against Alencar for breach of two promissory notes signed by Alencar in connection with the Rafard Facility.

### Alencar's Special Appearance

The original petition included the following allegation about the trial court's exercise of personal jurisdiction over Alencar: "[a]t all relevant times, Alencar had significant contacts with Dallas County which justify the imposition of personal jurisdiction on him here." It also generally alleged that venue is proper in Dallas County because "all or a substantial part of the events giving rise to [plaintiffs'] claims occurred in Dallas County, Texas." Alencar filed a general special appearance contesting the trial court's exercise of personal jurisdiction over him, along with a supporting affidavit.

In response to Alencar's special appearance, plaintiffs (1) obtained jurisdiction-related discovery from Alencar, (2) filed amended petitions that included additional claims and additional jurisdictional allegations against him, and (3) filed a written response to Alencar's special appearance, along with approximately 150 pages of supporting evidence. In response to the plaintiffs' additional claims and allegations, Alencar filed additional evidence to support his special appearance, but he did not amend his special appearance. After a hearing, the trial court denied Alencar's special appearance. The order does not state a basis for the trial court's ruling. Alencar did not request, and the trial court did not issue, findings of fact and conclusions of law. The appellate record in this case does not include a reporter's record from the hearing on the special appearance.

### ISSUE ON APPEAL

On appeal, Alencar challenges the trial court's order denying his special appearance. His brief states a single issue:

The legal issue presented is whether an investment into a refining facility in Brazil via a Brazilian entity by various parties, some of whom are Texas residents and some of whom are not, in which all operations and investment took place in Brazil, can support personal jurisdiction against a non-resident defendant who resides in Brazil and Florida, who was sought out by the Plaintiffs to facilitate the operations in Brazil.

### APPLICABLE LAW

#### Personal Jurisdiction

■ Texas courts may exercise personal jurisdiction over a nonresident defendant only if (1) the Texas long-arm statute permits the exercise of jurisdiction, and (2) the assertion of jurisdiction satisfies constitutional due-process guarantees. *Kelly*

*v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 657 (Tex.2010). The long-arm statute permits the exercise of personal jurisdiction over nonresident defendants that do business in Texas. *See PHC–Minden, L.P. v. Kimberly–Clark Corp.*, 235 S.W.3d 163, 166 (Tex.2007). The long-arm statute provides a non-exclusive list of what constitutes "doing business" in Texas, including (1) contracting with a Texas resident and either party is to perform the contract in whole or in part in Texas, and (2) committing a tort in whole or in part in Texas. Tex. Civ. Prac. & Rem.Code Ann. § 17.042 (Vernon 2008). Personal jurisdiction over a nonresident defendant satisfies constitutional due-process guarantees when the nonresident defendant has established minimum contacts with the forum state and the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Kelly*, 301 S.W.3d at 658.

 Minimum contacts are established when the nonresident defendant purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Kelly*, 301 S.W.3d at 657–58. A defendant's contacts with a forum can give rise to either specific or general jurisdiction. *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex.2009). Specific jurisdiction is established if the defendant's alleged liability arises out of or relates to the defendant's contacts with the forum state. *Id.* at 338. In contrast, general jurisdiction is established if the defendant has made continuous and systematic contacts with the forum, regardless of whether the defendant's alleged liability arises from those contacts. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex.

2007). "A general jurisdiction inquiry, therefore, is very different from a specific jurisdiction inquiry and involves a more demanding minimum contacts analysis, with a substantially higher threshold." *PHC–Minden*, 235 S.W.3d at 168 (internal quotations and citations omitted).

## Special Appearances and Standard of Review

 The plaintiff bears the initial burden to plead sufficient allegations to invoke jurisdiction under the Texas long-arm statute. *Moki Mac*, 221 S.W.3d at 574. Once the plaintiff has pleaded sufficient jurisdictional allegations, a defendant who contests the trial court's exercise of personal jurisdiction bears the burden of negating all bases of jurisdiction alleged by the plaintiff. *Id.* "The defendant can negate jurisdiction on either a factual or legal basis." *Kelly*, 301 S.W.3d at 659. A defendant negates jurisdiction on a factual basis by presenting evidence to disprove the plaintiff's jurisdictional allegations. *Id.* A defendant negates jurisdiction on a legal basis by showing that even if the plaintiff's jurisdictional allegations are true, the allegations are legally insufficient to establish personal jurisdiction. *Id.*

 The ultimate question of whether a trial court has personal jurisdiction over a nonresident defendant is a question of law. *Moki Mac*, 221 S.W.3d at 574. And because jurisdiction is a question of law, an appellate court reviews a trial court's determination of a special appearance de novo. *Id.* When a trial court does not issue findings of fact and conclusions of law to support its ruling, as in this case, we imply in favor of the trial court's ruling all necessary fact findings that are supported by the evidence. *Retamco Operating*, 278 S.W.3d at 337.

### ANALYSIS

To determine whether plaintiffs met their initial burden to plead sufficient allegations to invoke jurisdiction over Alencar under the Texas long-arm statute, we look at the jurisdictional facts pleaded in their petition, as well as the jurisdictional facts alleged in their response to Alencar's special appearance. *See* TEX.R. CIV. P. 120a(3); *Flanagan v. Royal Body Care, Inc.*, 232 S.W.3d 369, 374 (Tex.App.-Dallas 2007, pet. denied).

In their second amended petition, which was filed two weeks before the hearing on Alencar's special appearance and was the live petition at the time of the hearing, plaintiffs (1) generally alleged that Alencar made material misrepresentations to them about the Rafard Facility and failed to make payments on two promissory notes; (2) asserted claims against Alencar for fraud, negligent misrepresentation, breach of contract; and (3) pleaded the following jurisdictional facts against Alencar:

> [Alencar] is an individual citizen of the State of Florida. The causes of action asserted against Alencar arose from or are connected with the purposeful acts committed by Alencar in the State of Texas, or directed against residents of the State of Texas, including multiple telephone conferences with Plaintiffs or their representatives in this State for purposes of inducing Plaintiffs to make the investments set forth below, trips to Texas for purposes of promoting the investments by Plaintiffs as set forth below, and receipt of money from Texas based on his representations as set forth below. Furthermore, Alencar has a history of contacts with the State of Texas, including entering into contracts performable in this State, ownership and interest in Texas businesses, and has an outstanding judgment against him in this State. At all relevant times, Alencar had significant contacts with Texas, and directed his actions towards residents of Texas, which justify the imposition of personal jurisdiction on him in Texas.

In their response to Alencar's special appearance, which was filed five days before the hearing, plaintiffs argued that Alencar is subject to general and specific jurisdiction in Texas and included more detailed jurisdictional allegations against Alencar, along with citations to supporting evidence.[1]

First, to support their contention that Alencar is subject to general jurisdiction in Texas, plaintiffs made the following allegations:

(1) Alencar is an officer of CalBraz Management, LLC, a Texas limited liability company formed in 2008 and headquartered in Plano, Texas;

(2) Alencar had a commission agreement with TriAlpha LLC, a Texas limited liability company formed in 2005, and made calls and sent emails to TriAlpha's manager, Tryggestad, who worked in Dallas County;

(3) in 2006 or 2007, Alencar paid his own way to Dallas, Texas, to meet with Leisurecorp regarding the purchase of an airplane;

(4) in 2007, Alencar became the "Brazilian partner" of TruEnergy Renewable Fuels LLC, a Texas limited liability company, "purposefully came to Texas" to meet with, and regularly initiated phone calls to, Sooter,

---

1. The clerk's record demonstrates that the trial court ordered Alencar to respond to certain jurisdiction-related discovery requests. The evidence filed in support of plaintiffs' response to Alencar's special appearance includes excerpts from the transcript of Alencar's deposition and Alencar's interrogatory responses.

Tryggestad, and Lavender, who all lived and worked in Texas, regarding TruEnergy;

(5) in connection with his work as a televangelist, Alencar has been to Texas seven or eight times, has met with people in Texas to discuss buying television equipment and air time on Daystar, a religious network located in Dallas, he retained a Texas law firm in connection with Daystar dealings, and he appeared on television in Texas five years ago and asked Texas citizens to give money to his ministry,

(6) Alencar signed a promissory note for $2.5 million in favor of a payee whose address was in Dallas, Texas, and a Dallas County court has rendered a judgment against Alencar on that note, which Alencar is aware of and has not contested;

(7) Alencar signed two promissory notes in favor of plaintiff Shaw that state (a) payment is to be made to Dallas, Texas, and (b) they are governed by Texas law; and

(8) Alencar testified he has done business in Texas and came to Texas for business purposes.

Second, to support their contention that Alencar is subject to specific jurisdiction, plaintiffs alleged that Alencar was a paid consultant to plaintiff TruPetro, which is based in Dallas, Texas, and that Alencar made material misrepresentations during his multiple trips to Dallas to discuss the Rafard Facility with plaintiffs or their representatives. Plaintiffs also alleged that Alencar made misrepresentations about the Rafard Facility in emails he sent to, and phone calls he made to, plaintiffs' representatives in Texas. Plaintiffs also alleged that Alencar's misrepresentations were "a significant basis" of Shaw's and Leisurecorp's decisions to invest millions of dollars in the project, and that "Alencar's statements are at the heart of this lawsuit." Plaintiffs also alleged that Alencar received $402,000 from Shaw after signing a promissory note in favor of Shaw that included a Texas choice-of-law clause and required Alencar to direct his payments on the notes to a bank in Dallas, Texas, and that Alencar used that money for the Rafard Facility.

■ By alleging that Alencar is doing business in Texas and committed a tort in Texas, plaintiffs met their initial burden to plead sufficient allegations to bring Alencar within the reach of the Texas long-arm statute. *See Siemens AG v. Houston Cas. Co.,* 127 S.W.3d 436, 440 (Tex.App.-Dallas 2004, pet. dism'd) (allegation defendants doing business in Texas sufficient to bring defendants within provisions of long-arm statute); *Kelly,* 301 S.W.3d at 659 (noting plaintiff in tort case brings defendant within reach of long-arm statute if plaintiff alleges "the defendant committed tortious acts in Texas"); *see also* TEX. CIV. PRAC. & REM.CODE ANN. § 17.042. As a result, the burden shifted to Alencar "to negate all bases of personal jurisdiction alleged." *See Kelly,* 301 S.W.3d at 658. In this case, because plaintiffs alleged that Alencar is subject to both general and specific personal jurisdiction, it was Alencar's burden to negate both bases of personal jurisdiction. *See, e.g., Said v. Maria Invs., Inc.,* No. 01–08–00962, 2010 WL 457463, at *3 (Tex.App.-Houston [1st Dist.] Feb. 11, 2010, pet. filed) (mem. op.) (because plaintiff alleged defendants doing business in Texas, court considered whether defendants met burden "to negate the allegations supporting the exercise of general jurisdiction"); *Conn v. Diamond,* No. 02–05–00344–CV, 2006 WL 908746, at *3 (Tex. App.-Fort Worth Apr. 6, 2006, no pet.) (mem. op.) (because plaintiff alleged defen-

dant committed tort in Texas, defendant required to negate specific jurisdiction).

Alencar filed his special appearance more than five months before plaintiffs supplemented their jurisdictional allegations with the allegations described above. In addition to generally describing the law relevant to a court's assertion of personal jurisdiction over a nonresident defendant, Alencar's special appearance states, in its entirety:

> Texas courts do not have general jurisdiction over Alencar because Alencar has not had continuous or systematic contacts with Texas. Alencar has no clients in Texas, does not conduct business in Texas, and has no place of business in Texas.
>
> . . .
>
> Texas courts do not have specific jurisdiction over Alencar because Alencar did not purposefully avail himself of the privilege of conducting activities within Texas.... No action of Alencar occurred in Texas and any contacts with Texas are incidental at best. Further there was no benefit, advantage or profit to Alencar through any incidental or fortuitous contacts with Texas.
>
> . . .
>
> Alencar would be subject to great burden if he is forced to defend this suit in Texas. Alencar has a limited budget. The cost and time required to travel to Texas to participate in this litigation would be substantial. The State of Texas has no greater interest in the adjudication of this matter as any other state. Further, Plaintiffs can obtain effective relief in Florida. As set forth in Plain-

tiffs' Petition, one of the Plaintiffs, Shaw, is a resident of Texas [sic].[2]

Alencar's supporting affidavit generally tracks the statements in his special appearance:

> I have not committed any tort, in whole or in part, in Texas.
>
> I have not had minimum contacts with Texas.[3]
>
> I have not had continuous or systematic contacts with Texas.
>
> I have not purposefully availed myself to the jurisdiction of Texas.
>
> I have not performed or participated in any purposeful act in Texas related to or arising out of the allegations set forth in this Lawsuit against me.
>
> The burden placed on me by requiring me to litigate the Lawsuit in Texas would be substantial and highly burdensome. I have a limited budget. The cost and time required to travel to Dallas, Texas to participate in the Lawsuit would be substantial and highly burdensome.
>
> The exercise of jurisdiction over me would offend traditional notions of fair play and substantial justice and would be inconsistent with the constitutional requirements of due process.

Alencar also stated in his affidavit that (1) he is not a resident of Texas and was not a resident of Texas during the relevant time period; (2) he does not maintain an office, address, telephone number, or bank account, in Texas; (3) he does not have any employees or a registered agent for service of process in Texas; (4) he does not advertise, provide any services, sell any products, direct any mass mailings, own

---

**2.** It is undisputed that Shaw is a resident of Florida.

**3.** Alencar's affidavit originally stated that "I have minimum contacts with Texas," but Alencar later filed a correction to his affidavit

explaining that the words "do not" were omitted from his affidavit, and that the sentence should read "I do not have minimum contacts with Texas."

any real or personal property, or have any ownership interests in any businesses located in Texas; and (5) he is not licensed or regulated by any Texas authorities.

Alencar filed two other exhibits to support his special appearance. First—one week after plaintiffs filed their second amended petition, and one week before the hearing on his special appearance—Alencar filed an exhibit consisting of a one-page email. That email appears to be from Alencar to two individuals named Stan McNaughton and Eric Bostrom. The connection of the email to this case is not apparent. The email is dated almost two months after the original petition was filed in this case,[4] and the body of the email states in its entirety (including typographical and grammatical errors):

> Stan/Eric
>
> *Farm detail*
>
> As a precaution my name should be removed immediately ASAP from the USA farm corporation, Calbras the quicker the better,
>
> Please get Kyle or someone to do it. I must be out to protect us since I am already in the mess here.
>
> Thanks
>
> gineton

Second—less than an hour before the hearing on his special appearance,[5] Alencar filed an exhibit consisting of various excerpts from his deposition totaling 36 pages. Alencar did not amend his special appearance or otherwise file any argument explaining why or how the email or deposition excerpts negate any of plaintiffs' jurisdictional allegations or otherwise support his special appearance.

The parties do not contend, and the trial court's order does not suggest, that any evidence was presented at the hearing on Alencar's special appearance. As a result, we presume that the hearing was nonevidentiary and must decide the appeal on the clerk's record alone. *Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 783 (Tex.2005).

Although Alencar contested the exercise of general or specific jurisdiction and denied certain types of contacts with Texas, he did not address any of the plaintiffs' specific jurisdictional allegations in his special appearance. As a result, Alencar's special appearance did not negate the plaintiffs' jurisdictional allegations either (1) factually, by disproving plaintiffs' allegations, or (2) legally, by showing that plaintiffs' allegations are insufficient to establish jurisdiction. *See Kelly,* 301 S.W.3d at 659 (defendant challenging personal jurisdiction must negate jurisdictional allegations either factually or legally); *Said,* 2010 WL 457463, at *4 (defendants failed to negate general jurisdiction because special appearances addressed only some of plaintiffs' jurisdictional allegations and left other allegations unaddressed); *Conn,* 2006 WL 908746, at *3 (defendant failed to negate specific jurisdiction because defendant's special appearance "negated several bases for general jurisdiction" but did not address the basis for specific jurisdiction alleged by plaintiff). After plaintiffs filed their amended petition, Alencar filed the email quoted above to support his special appearance, but the clerk's record does not contain any explanation about how or why that email negates general or specific jurisdiction. Likewise, after plaintiffs filed

---

**4.** The original petition was filed February 18, 2009, and the email is dated April 3, 2009.

**5.** The file-stamp on the exhibit indicates that it was filed at 8:07 a.m. on September 30, 2009, and the trial court's docket sheet indicates that the hearing was set for 8:45 a.m. that same day.

their response to Alencar's special appearance, Alencar filed 36 pages of excerpts from his deposition to support his special appearance, but the clerk's record does not contain any argument or explanation about how or why those excerpts negate general or specific jurisdiction.

On appeal, Alencar argues that he is not subject to general jurisdiction for two reasons: (1) "the disputes between the parties arise out of and relate to a Brazilian investment made by [p]laintiffs, in which all operations were conducted in Brazil, and Alencar was sought out for his background and expertise in regard to Brazil, having nothing to do with Texas"; and (2) "[t]he nature and quality of [the] random and sporadic contacts set forth by [p]laintiffs are simply insufficient to confer general jurisdiction over Alencar."

Alencar next argues that he is not subject to specific jurisdiction for six reasons: (1) "the promissory notes do not contain a forum selection clause, which would be necessary to confer Texas jurisdiction upon Alencar"; (2) "the notes are payable to Shaw, who is not a Texas resident"; (3) "[c]ontracting with a Texas resident and requiring payment in Texas alone does not, in and of itself, establish specific jurisdiction as to an out of state resident"; (4) "any communications to Shaw or his representatives cannot be considered at all [because] Shaw is not a Texas resident[;] Shaw is a resident of Florida"; (5) Alencar's communications with "Leisurecorp are insufficient to provide Texas with specific jurisdiction over Alencar [because communicating with Texas residents] and benefitt[ing] from work performed in Texas is insufficient to establish personal jurisdiction"; and (6) "Alencar's communications to the other parties in this case" do not demonstrate that he "purposefully availed himself of the Texas forum" because those communications were "pursu-

ant to his status as the Brazilian operational party in regard to the Brazilian entity that was formed in Brazil."

Alencar also argues that the exercise of personal jurisdiction over him in Texas would offend traditional notions of fair play and substantial justice for two reasons: (1) Alencar "conducted his activities almost exclusively in Brazil, and the issues regarding the performance of the Rafard Facility derive from issues and concerns specific to Brazil"; and (2) this is a case "involving an investment in Brazil and residents of Florida," and Texas does not offer "the most convenient and effective relief for the parties."

Finally, Alencar argues that he is immune from both general and specific jurisdiction under the fiduciary shield doctrine.

The record does not demonstrate that the arguments Alencar asserts on appeal were raised below. As a result, we cannot consider them on appeal. *See, e.g., Anchia v. DaimlerChrysler AG,* 230 S.W.3d 493, 500 n. 1 (Tex.App.-Dallas 2007, pet. denied) (declining to address appellants' argument that "jurisdiction is proper because appellee employed MBUSA's distribution system" because "appellants did not present this argument to the trial judge"); *Ltd. Logistics Servs., Inc. v. Villegas,* 268 S.W.3d 141, 150 (Tex.App.-Corpus Christi 2008, no pet.) (concluding appellant waived argument that carrier agreement did not support exercise of specific jurisdiction because argument was not raised in special appearance or elsewhere in appellate record); *Reynolds v. Reynolds,* 2 S.W.3d 429, 430 (Tex.App.-Houston [1st Dist.] 1999, no pet.) (concluding appellant's argument that Uniformed Services Former Spouses' Protection Act preempts minimum contacts test waived for purposes of appeal because appellant "did not raise this argument in

the trial court").[6]

CONCLUSION

The clerk's record does not demonstrate that Alencar met his burden to negate general and specific personal jurisdiction, either factually or legally. As a result, we conclude that the trial court did not err by denying Alencar's special appearance and we affirm the trial court's order.

---

6. Additionally, to support most of his arguments on appeal, Alencar cites generally, and repeatedly, to all 36 pages of excerpts from his deposition that he filed to support his special appearance without providing any explanation about how those excerpts support his arguments. As a result, we question whether his arguments were adequately briefed. *See* TEX.R.APP. P. 38.1; *see also Martinez v. de Anda*, No. 13–09–00277–CV, 2010 WL 2543892, at *12 (Tex.App.-Corpus Christi June 24, 2010, no pet.) (mem. op.) (overruling certain issues raised in plaintiffs' appeal from order granting special appearance because supported by general citation to nearly 1,500 pages of evidence "without explaining how any of this testimony satisfies [appellants'] burden of proof").