**AFFIRM; and Opinion Filed January 13, 2023.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-22-00052-CV

**HINDUJA GLOBAL SOLUTION, INC. AND HGS HEALTHCARE, LLC,**
**Appellants**
**V.**
**ALI GANJAEI, Appellee**

**On Appeal from the 191st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-19-20539**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Nowell, and Wright[1]
Opinion by Justice Wright

In this interlocutory appeal, Hinduja Global Solution, Inc. (HGSI)

challenges the trial court's order granting Ali Ganjaei's special appearance. HGSI

asserts the trial court erred in granting the special appearance because it met the

initial burden of pleading sufficient allegations to bring Ganjaei within the

---

[1] The Hon. Carolyn Wright, Justice, Assigned.

provisions of the Texas long-arm statute, and further allege Ganjaei did not negate all bases for jurisdiction.[2]

In addition, HGSI, joined by HGS Healthcare, LLC (HGS Healthcare), requests that we vacate the order granting Ganjaei's special appearance and remand for further proceedings in light of new, yet unspecified, evidence that they claim became available after the hearing on Ganjaei's special appearance. And HGS Healthcare further requests that we expressly acknowledge that the order granting Ganjaei's special appearance is limited to HGSI's claims against him because HGS Healthcare was not a party to this suit when Ganjaei challenged the trial court's jurisdiction over him. For the reasons set forth herein, we affirm the trial court's order granting Ganjaei's special appearance and dismissing HGSI's claims against him. Because all issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

## BACKGROUND

This case originated as a suit by Synergy Global Outsourcing, LLC (Synergy), a Dallas-based company organized under the laws of Nevada, against appellant HGSI, a Delaware corporation, headquartered in Illinois, and arose from the parties' long-standing business relationship whereby Synergy procured

---

[2] While HGSI generally asserts in its brief that the trial court erred in vacating its order striking portions of the declaration Ganjaei presented in support of his special appearance, it does not otherwise address this contention. Accordingly, we will not address same. *See Washington v. Bank of New York*, 362 S.W.3d 853, 854 (Tex. App.—Dallas 2012, no pet.) (bare assertions of error, without argument or authority, waive error).

customers for HGSI's management services in exchange for a commission. This long-standing business relationship was memorialized in 2011 in a written broker agreement (the "Broker Agreement"). Synergy contends HGSI breached the Broker Agreement by failing to fulfill its payment obligations thereunder.

HGSI asserted counterclaims against Synergy and joined Ganjaei as a party to the suit. With respect to Ganjaei, HGSI asserted claims of breach of fiduciary duty and conspiracy to cause breach of fiduciary duty. HGSI's claims against Synergy and Ganjaei stem, in part, from Ganjaei's prior association with HGSI, as a legal advisor and board member, and his association with his employer, HBI Incorporated N.V. and/or HBI Group Inc. (collectively "HBI"),[3] an entity that acquired a controlling equity interest in Synergy. HGSI now contends that it was not in its best interest to enter into the Broker Agreement and that Ganjaei breached his fiduciary duty by advising and causing it to enter into the agreement after having caused HBI to acquire the interest in Synergy and, by extension, causing himself to benefit from HGSI's payments under the agreement. In addition, HGSI contends Ganjaei failed to disclose to HGSI during the negotiation of the Broker Agreement that HBI owned a majority interest in Synergy. HGSI additionally contends that Ganjaei breached his fiduciary duties by controlling Synergy's business activities through his role as the representative of HBI and

_____

[3] HBI Incorporated N.V. is a Curacao limited liability company, with an office in New York. HBI Group Inc. is a New York corporation, headquartered in New York. It appears from the record before us that HBI provides legal, accounting, and human-resources services to its clients.

–3–

increasing the lines of business covered by the Broker Agreement, resulting in HGSI paying additional commissions. HGSI also contends Ganjaei breached his fiduciary duties by causing Synergy to seek unfair commission rates when negotiating other broker agreements with HGSI or its affiliates and advised and caused HGSI to enter into agreements that benefitted Ganjaei and other former HGSI board members. Finally, HGSI alleges Ganjaei shared confidential information to be used against HGSI in connection with the litigation and conspired with Synergy and other former HGSI board members to breach fiduciary duties.

Ganjaei, a resident of New Jersey, specially appeared in the case challenging the trial court's exercise of personal jurisdiction over him. In support of his special appearance, Ganjaei presented his declaration establishing, in part, the following:

- Ganjaei is a resident of New Jersey, has never lived in Texas, does not have a bank account in Texas, does not employ anyone in Texas and does not own any real property in Texas.

- Ganjaei is a lawyer licensed to practice law in New York, and substantially all of the work he has performed as a lawyer has taken place in New York. He has never practiced law or preformed legal services in Texas.

- To the extent Ganjaei advised HGSI on any matter, it was usually in his capacity as a board member and involved purely business advice on merger and acquisition transactions. He was not in Texas when he gave any advice.

- When the Broker Agreement was negotiated and executed, HGSI's parent company's general counsel acted as HGSI's counsel.

- Ganjaei did not draft or participate in the negotiation of the Broker Agreement. His only involvement with the Broker Agreement was in 2011,

–4–

after the agreement had been negotiated and finalized, and was limited to comparing the document and looking at the exhibits and confirming that the commission percentages were consistent with those paid in 2004 (evidently when the relationship between HGSI and Synergy began). This comparison took approximately five minutes and occurred in New York or New Jersey.

- Ganjaei did not advise, vote or otherwise participate in the approval of the Broker Agreement. None of his involvement in his employer, HBI's, purchase of an ownership interest in Synergy in 2010 occurred in Texas. Instead, it occurred in New York or New Jersey.

- HGSI was aware of HBI's purchase of an interest in Synergy. In fact, Partha De Sarkar, an officer and director of HGSI, was overjoyed about the purchase because it meant replacing Synergy's co-founder with whom De Sarkar had a tortured relationship.

- Ganjaei was not involved in Synergy's day-to-day operations. He did not draft, negotiate or meaningfully review the substance of any broker agreement. Any comments he made regarding the relationship between HGSI and Synergy would have been from New York or New Jersey.

- Ganjaei did not attend any Synergy board meeting in Texas.

- Ganjaei did not receive compensation from Synergy and his compensation from HBI was not tied to Synergy's performance.

HGSI responded by presenting 17 exhibits at the hearing on Ganjaei's special appearance, most of which are not relevant to the specific personal jurisdiction issue presented in this case. For example, several of the exhibits are agreements to which Ganjaei is not a party and concern contacts that are not connected to the operative facts of the claims asserted by HGSI. While HGSI's president contends, through a declaration, that he signed the Broker Agreement in reliance on Ganjaei's assurances that he reviewed and approved it in his capacity as legal counsel for HGSI and that Ganjaei and attorneys he supervised at HBI

–5–

provided legal services to HGSI, he did not refute Ganjaei's assertion that any legal services provided were performed somewhere other than Texas. The limited excerpts from the depositions of Ganjaei and various individuals who at one time had been associated with Synergy that HGSI introduced into evidence at the special appearance hearing do not refute Ganjaei's assertions. And, in fact, HGSI does not urge on appeal that it presented evidence that affirms its allegations; rather, it contends Ganjaei failed to meet his burden of negating the basis for jurisdiction.

The trial court took the special appearance under advisement. Thereafter, Synergy amended its petition to add HGS Healthcare, an Illinois limited liability company, doing business in Texas, as a defendant and, a few months later, HGS Healthcare joined HGSI's claims against Ganjaei and Synergy. On February 17, 2022, almost a year after the special appearance hearing, the trial court signed an order granting Ganjaei's special appearance. This interlocutory appeal followed. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(7).

**DISCUSSION**

## I.     Standard of Review

Whether a court can exercise jurisdiction over a nonresident is a question of law. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). Thus, we review de novo a trial court's order granting or denying a special appearance. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex.

–6–

2007).  However, the exercise of personal jurisdiction requires the trial court to resolve any factual disputes before applying the jurisdictional formula.  *Univ. of Ala. v. Suder Found.*, No. 05-16-00691-CV, 2017 WL 655948, at *3 (Tex. App.—Dallas Feb. 17, 2017, no pet.) (mem. op.).  When, as here, the trial court does not make findings of fact or conclusions of law in support of its special appearance ruling, we presume that all fact disputes were resolved in favor of the trial court's decision unless they are challenged on appeal for legal or factual sufficiency. *Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 8 (Tex. 2021).

## II.     Personal Jurisdiction

Texas courts may exercise personal jurisdiction over a nonresident defendant only if (1) the Texas long-arm statute permits the exercise of jurisdiction and (2) the jurisdiction satisfies constitutional due process.  *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 805–06 (Tex. 2002).  Our long-arm statute allows jurisdiction over a nonresident that does business in Texas.  TEX. CIV. PRAC. & REM. CODE ANN. § 17.042.  The broad doing-business language allows the statute to reach as far as the federal constitutional requirements of due process will allow. *Moki Mac*, 221 S.W.3d at 575.  Constitutional due process permits a state to exercise jurisdiction only when a nonresident defendant has sufficient minimum, purposeful contact with the state, and the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice.  *BMC Software*, 83 S.W.3d at 795.

When, as here, a party asserts there is specific jurisdiction over a nonresident, we focus on two prongs: (1) purposeful availment and (2) relatedness. *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009). The purposeful availment prong analyzes (1) the defendant's own actions, but not the unilateral activity of another party, (2) whether the defendant's actions were purposeful rather than random, isolated, or fortuitous, and (3) whether the defendant sought some benefit, advantage, or profit by availing itself of the privilege of doing business in Texas. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005). It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Id.* at 784. Further, the defendant's activities must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court. *Suder Found.*, 2017 WL 655948, at *3. The quality and nature of the defendant's contacts, rather than their number, governs the inquiry in the minimum contacts analysis. *Id.*

The relatedness prong analyzes the relationship among the defendant, the forum, and the litigation. *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 67 (Tex. 2016). Courts may exercise specific jurisdiction when the defendant's forum contacts are isolated or sporadic only if the plaintiff's cause of action arises from or relates to those contacts. *TV Azteca v. Ruiz*, 490 S.W.3d 29, 37 (Tex. 2016).

–8–

Thus, for a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation. *Cornerstone Healthcare Grp. v. Nautic Mgmt. VI, L.P.*, 493 S.W.3d 65, 73–74 (Tex. 2016). The operative facts are those on which the trial will focus to prove liability of the defendant who is challenging jurisdiction. *Id.*

In a challenge to personal jurisdiction, the plaintiff and the defendant bear shifting burdens of proof. *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 559 (Tex. 2018). The plaintiff bears the initial burden to plead sufficient allegations to bring the non-resident defendant within the reach of Texas's long-arm statute. *Id.* Once the plaintiff meets its burden, the burden shifts to the defendant to negate all alleged bases of jurisdiction. *Id.* The defendant can meet this burden by negating jurisdiction on either a factual or legal basis. *Id.* Factually, the defendant can present evidence that it lacks contacts with Texas. *Kelly v. Gen. Interior Const., Inc.*, 301 S.W.3d 653, 659 (Tex. 2010). The plaintiff can then respond with its own evidence that affirms its allegations. *Id.* Legally, the defendant can show that even if the plaintiff's alleged facts are true (1) the evidence is legally insufficient to establish jurisdiction, (2) the defendant's contacts with Texas fall short of purposeful availment, (3) for specific jurisdiction, that the claims do not arise from the contacts, or (4) that traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction." *Id.*

## III.    Analysis

With respect to personal jurisdiction over Ganjaei, HGSI's live pleading at the time Ganjaei's special appearance was heard alleged:

> The Court has personal jurisdiction over Ganjaei pursuant to Tex. Civ. Prac. & Rem. Code § 17.042 because . . . Ganjaei established minimum contacts with Texas by purposefully conducting activities directed to Texas . . . for Ganjaei's benefit, thereby obtaining the benefits and protections of Texas's laws and doing business in Texas, and HGSI's counterclaims against Ganjaei relate to and arise out of Ganjaei's contacts with Texas.  The exercise of personal jurisdiction over Ganjaei in this case comports with the requirements of due process under the Fourteenth Amendment.

We conclude, and Ganjaei concedes, HGSI met the threshold pleading requirement and the burden shifted to Ganjaei to negate the alleged basis for exercising jurisdiction.  *See Alencar v. Shaw*, 323 S.W.3d 548, 553 (Tex. App.—Dallas 2010, no pet.) (minimal pleading requirement satisfied by allegation nonresident defendant is doing business in Texas or committed tortious acts in Texas).  Here, that basis is specific jurisdiction.

As an initial matter, we point out that HGSI is not a Texas corporation and does not maintain its principal place of business in Texas.  The Texas forum only came into play because Synergy initiated suit against HGSI in Texas and the counterclaims emanated thereafter.   Because we are dealing with specific jurisdiction here, HGSI cannot bootstrap other parties' actions to confer jurisdiction over Ganjaei.  *See Michiana*, 168 S.W.3d at 785.  Nor can it establish jurisdiction over Ganjaei by simply asserting he conspired with a Texas resident.

–10–

*Ahrens & DeAngeli, P.L.L.C. v. Flinn*, 318 S.W.3d 474, 486 (Tex. App.—Dallas 2010, pet. denied) ("In *National Industrial Sand Association v. Gibson*, 897 S.W.2d 769, 773 (Tex. 1995) (orig. proceeding), the Texas Supreme Court declined to recognize the assertion of personal jurisdiction over a nonresident defendant based solely on the effects or consequences of an alleged conspiracy with a resident of the forum state."). In addition, because HGSI sues Ganjaei in his individual capacity, only his contacts in that capacity are relevant to the jurisdictional inquiry. *See Hanschen, Trustee of David Hanschen Heritage Trust Two v. Hanschen*, No. 05-19-01134-CV, 2020 WL 2764629, at *3 (Tex. App.—Dallas May 28, 2020, no pet.) (mem. op.) (citing *Stauffer v. Nicholson*, 438 S.W.3d 205, 212 (Tex. App.—Dallas 2014, no pet.)). Accordingly, Ganjaei's contacts with Synergy as HBI's representative are irrelevant to our jurisdictional inquiry.

Because Ganjaei had very limited physical presence in the State of Texas, HGSI relies heavily on directing-a-tort and targeting-assets theories to urge jurisdiction over Ganjaei. Both of those theories fail, however, because the Texas Supreme Court has clearly stated that "a nonresident directing a tort at Texas from afar is insufficient to confer specific jurisdiction," *see Michiana*, 168 S.W.3d at 790–92, and, notwithstanding the fact that HBI's actions cannot be attributed to Ganjaei for jurisdictional purposes, HBI did not target or purchase Texas assets, it simply acquired an interest in a Nevada limited liability company that provides a

service that is not based on hard assets located in Texas.[4] With this backdrop in mind, we proceed to analyze Ganjaei's alleged contacts with Texas.

HGSI's breach of fiduciary duty claims against Ganjaei generally fall into five categories; namely, (1) claims arising from Ganjaei's alleged provision of legal services to HGSI and, in particular, in connection with the Broker Agreement, (2) claims arising from Ganjaei's role as a member of HGSI's board of directors and alleged involvement in the Broker Agreement, (3) claims arising from Ganjaei's alleged involvement in contracts other than the Broker Agreement and in various business relationships relating to HGSI affiliates,[5] (4) claims Ganjaei participated in various legal actions involving Texas, and (5) claims Ganjaei failed to disclose conflicts in interest. We address those five categories in turn. In doing so, as described above, we focus on the two prongs relevant to the specific jurisdiction inquiry: "purposeful availment" and "relatedness," which requires a substantial connection between a nonresident's forum contacts and the operative facts of the litigation. *See Moki Mac*, 221 S.W.3d at 585.

---

[4] HGSI relies on *Cornerstone* to support its targeting Texas assets theory as a basis for jurisdiction. In *Cornerstone*, the supreme court held private equity funds that created subsidiaries for the sole purpose of investing in and profiting from Texas assets, a chain of Texas hospitals, were subject to specific jurisdiction in a suit arising out of the investment transaction. 493 S.W.3d at 72–74. The plaintiffs in *Cornerstone* did not sue an out-of-state lawyer for one of the involved entities, and that case is not instructive here.

[5] Because HGS Healthcare was not a party to Ganjaei's special appearance and did not appear and participate in the hearing on Ganjaei's special appearance and is not included in the caption of the order granting Ganjaei's special appearance, any claims HGS Healthcare may have against Ganjaei, and alleged contacts of Ganjaei with respect to same, are not before us and are irrelevant to our resolution of this interlocutory appeal.

With respect to the first category, we note, as a general rule, that legal work performed outside the state is not a proper basis for personal jurisdiction in Texas and the mere existence of an attorney–client relationship, unaccompanied by other sufficient contacts with the forum, does not confer personal jurisdiction over the non-resident in the forum state. *See Ahrens*, 318 S.W.3d at 484–485 (holding trial court did not have specific personal jurisdiction over Washington law firm where the legal work at issue was performed in Washington or Idaho and relevant communications were made from there to Texas); *see also Fried, Frank, Harris, Shriver & Jacobson LLP v. Millennium*, No. 05-16-01132-CV, 2017 WL 3276010, at *8 (Tex. App.—Dallas July 31, 2017, pet. denied) (mem. op.).[6] For example, the non-resident attorney must take affirmative action to promote business within the forum state. *Ahrens*, 318 S.W.3d at 484. Telephone calls and correspondence as activities directed at the forum state are generally insufficient. *Id.* Not even isolated trips to the forum state during the representation, when coupled with the long distance communications, amount to activities directed at the forum. *Id.*

Here, we note, to the extent an attorney–client relationship existed between HGSI and Ganjaei, it did not, in the first instance, involve a client or attorney

---

[6] In *Fried Frank*, this Court concluded an affidavit that is materially similar to Ganjaei's declaration negated personal jurisdiction based on claims about the defendant's out-of-state legal work. 2017 WL 3276010, at *8. More particularly, this Court concluded an attorney's affidavit stating (1) he had not practiced law in Texas, (2) no legal services that he or his colleagues performed concerning an agreement respecting tax benefits (the "TBA") were performed in Texas, and (3) the TBA had no connection with Texas negated Millineum's jurisdictional allegations with respect to a meeting at which Millennium asserted the attorney took positions that were adverse to Millennium's interests respecting disputed tax benefits addressed in the TBA. *Id.*

resident in Texas and there is no assertion that Ganjaei sought clients or otherwise affirmatively promoted personal business in Texas. While Ganjaei disavowed having acted as HGSI's general counsel or otherwise having provided legal services to same, Ganjaei established any provision of legal services would have occurred somewhere other than Texas. That evidence, on its face, established Ganjaei did not purposefully avail himself of the benefits and protection of Texas law and negated jurisdiction over HGSI's claims against Ganjaei in his capacity as a lawyer. *See id.* at 485.

With respect to the second category, to the extent Ganjaei as a HGSI board member had any involvement in the Broker Agreement, it was very limited and occurred in New York or New Jersey. Accordingly, Ganjaei, in his capacity as a member of HGSI's board of directors, did not purposefully avail himself of the benefits and protections of Texas law and negated jurisdiction over HGSI's claim against Ganjaei as a board member.

With respect to the third category, HGSI contends Ganjaei and other HGSI fiduciaries targeted Texas assets, including a controlling stake in Synergy and a Columbian call center, and sought to profit from investing in Texas assets. But there is no evidence Ganjaei personally targeted Texas, sought Texas assets, or sought Texas customers. The record shows HBI, not Ganjaei, acquired an interest in Synergy, a Nevada limited liability company, and there is no assertion or evidence that HBI is Ganjaei's alter ego. *See id.* at 486. Moreover, Ganjaei

–14–

established his involvement in HBI's procurement of an equity interest in Synergy occurred in New York or New Jersey, not in Texas. In addition, with respect to HGSI's assertion concerning other agreements between Synergy and HGSI or its affiliates, Ganjaei established he was not involved in Synergy's day-to-day business and neither Synergy nor HGSI asked him to draft, negotiate or meaningfully review the substance of any broker agreement. Accordingly, Ganjaei did not purposefully avail himself of the benefits or protections of Texas law with respect to this third category of claims. To the extent this third category includes agreements between Synergy and an entity other than HGSI, there is no meaningful connection to the operative facts of HGSI's claims against Ganjaei and, thus, they are irrelevant to the jurisdictional inquiry. *See Moki Mac*, 221 S.W.3d at 585.

With respect to the fourth category, HGSI's assertion that Ganjaei was involved in certain litigation in Texas, specifically Messilla Office Solution LLC's[7] suit against HGS Healthcare with respect to an equipment lease, those alleged contacts do not have a substantial connection to the operative facts of HGSI's claims and thus are irrelevant to the jurisdictional inquiry. *See id.* In addition, while HGSI references Ganjaei's alleged involvement in employment issues arising out of its El Paso, Texas operations, those alleged contacts are not

---

[7] It appears Messilla Office Solutions is a subsidiary of HBI and that Ganjaei is, or was, the manager of the company.

connected to any claim HGSI asserts against Ganjaei. Consequently, any contact Ganjaei may have had with Texas with respect to same is irrelevant to our jurisdictional inquiry. *Id.*

With respect to the final category, dealing with HGSI's assertions that Ganjaei failed to disclose various claimed conflicts of interest, an alleged failure to disclose cannot be purposeful availment of a Texas forum. By its very nature, failure to disclose demonstrates that a party did not have contacts with the forum state. *Brocail v. Anderson*, 132 S.W.3d 552, 564 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (citing *Anderson v. Bechtle*, No. 01-00-00593-CV, 2001 WL 930205, at *2 (Tex. App.—Houston [1st Dist.] Aug. 16, 2001, no pet.) (not designated for publication)).

Moreover, and globally as it may relate to any claims HGSI has against Ganjaei in connection with Synergy, Ganjaei established he did not obtain a benefit, advantage or profit from that connection. *See Michiana*, 168 S.W.3d at 785. More particularly, in addition to establishing he did not receive compensation from Synergy, he established his compensation from his employer, HBI, was not tied to Synergy's performance. Thus, Ganjaei negated any purposefully availment of the Texas forum precluding the exercise of personal jurisdiction over him under the long-arm statute.

Because Ganjaei established the long-arm statute does not authorize jurisdiction over him, with respect to HGSI's claims against him, we need not

–16–

determine whether he established exercising jurisdiction over him would offend traditional notions of fair play and substantial justice. *See Baldwin v. Household Int'l, Inc.*, 36 S.W.3d 273, 277 (Tex. App.—Houston [14th Dist.] 2001, no pet.). We resolve HGSI's issue against it.

## CONCLUSION

We affirm the trial court's order granting Ganjaei's special appearance. Because HGS Healthcare was not a party to Ganjaei's special appearance and did not defend against his jurisdictional challenge, we conclude the trial court's order did not dispose of its claims against Ganjaei.

/Carolyn Wright/
CAROLYN WRIGHT
JUSTICE, ASSIGNED

220052F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

HINDUJA GLOBAL SOLUTION, INC. AND HGS HEALTHCARE, LLC, Appellants

No. 05-22-00052-CV     V.

ALI GANJAEI, Appellee

On Appeal from the 191st Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-19-20539. Opinion delivered by Justice Wright. Justices Partida-Kipness and Nowell participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee ALI GANJAEI recover his costs of this appeal from appellant HINDUJA GLOBAL SOLUTION, INC. AND HGS HEALTHCARE, LLC.

Judgment entered this 13th day of January 2023.