**AFFIRMED and Opinion Filed April 13, 2023**



In The

# Court of Appeals
## Fifth District of Texas at Dallas

**No. 05-22-00109-CV**

**STUART G. HAGLER, Appellant**
**V.**
**TIM MCNICKLE AND ROBERT YODER, Appellees**

**On Appeal from the 14th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-20-19161**

## MEMORANDUM OPINION

Before Justices Molberg, Reichek, and Breedlove
Opinion by Justice Breedlove

The trial court granted appellees Tim McNickle's and Robert Yoder's special

appearances challenging personal jurisdiction. Appellant Stuart G. Hagler appeals,

complaining the trial court had personal jurisdiction over McNickle and Yoder and

that their challenges to personal jurisdiction were erroneously granted. Concluding

that the trial court lacked personal jurisdiction over McNickle and Yoder, we affirm

the trial court's judgment.

# I.    BACKGROUND

According to Hagler's petition, McNickle and Yoder formed Grupo Logistico RTM S de RL de CV, Zihuatenejo (GL), a Mexican company, on or about January 30, 2013, for the purpose of mining and holding mineral interests.[1]  On May 15, 2018, the parties met in Duncanville, Texas, to discuss Hagler's becoming a member in GL.  On May 18, 2018, McNickle, acting on behalf of GL, requested Hagler pay $10,000.00 to GL to assist with GL's mining efforts, which Hagler paid.  McNickle again requested funds the following month, and Hagler made two additional payments of $10,000.00 to GL. Hagler also wired an additional $525.00 into a GL account.  Hagler claims he was to receive a 25% interest in GL for his contributions, but on July 1, 2019, Hagler received notice of a 0.25% interest in GL.

Hagler filed suit on December 29, 2020, requesting the court find that defendants breached their contract by failing to provide him with the agreed-upon 25% ownership interest.

Both Yoder and McNickle filed special appearances objecting to personal jurisdiction.  They attached affidavits to their special appearances.  Both stated they were not residents of Texas and that they had not done business in Texas.  Hagler responded to the special appearances and filed an affidavit along with a series of text messages and emails that he relied on to establish personal jurisdiction.  The trial

---

[1] Max Bayless, another defendant in the underlying suit, was also a member of GL but was never served and did not appear.  Bayless is not a party to this appeal.

court held a hearing on May 12, 2021, and signed an order granting the special appearances and dismissing the case against Yoder and McNickle.

Hagler appealed the trial court's ruling on February 7, 2022. In five issues, Hagler complains that: (1) in a contract dispute, whether or not a contract actually exists does not determine jurisdiction as long as the plaintiff pleads a contract exists; (2) McNickle and Yoder did not disprove every jurisdictional fact Hagler alleged; (3) their special appearances and motions to challenge jurisdiction "were not properly before the trial court"; (4) both had minimum contacts with Texas; and (5) the trial court had jurisdiction over both Yoder and McNickle under the Texas Long Arm Statute.

## II.    STANDARD OF REVIEW AND APPLICABLE LAW

### A. Standard of Review

Whether a trial court has personal jurisdiction over a nonresident defendant is a question of law that appellate courts review de novo. *E.g.*, *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 558 (Tex. 2018). When a trial court does not issue findings of fact and conclusions of law with its special appearance ruling, all facts necessary to support the judgment and supported by the evidence are implied. *Id.* When the relevant facts in a case are undisputed, an appellate court need not consider any implied findings of fact and considers only the legal question of whether the undisputed facts establish Texas jurisdiction. *Id*.

## B. Burdens of the Parties in a Special Appearance

The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the Texas long-arm statute. *E.g.*, *id.* at 559; *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 149 (Tex. 2013). In order to meet this burden, a plaintiff must show the act on which jurisdiction is predicated, not a prima facie demonstration of the existence of a cause of action. *Steward Health Care Sys. LLC v. Saidara*, 633 S.W.3d 120, 126 (Tex. App.—Dallas 2021, no pet.) (en banc) (internal citations omitted). This minimal pleading requirement is satisfied by an allegation that the nonresident defendant is doing business in Texas or committed tortious acts in Texas. *Id.* (citing *Alencar v. Shaw*, 323 S.W.3d 548, 553 (Tex. App.—Dallas 2010, no pet.)). If the plaintiff does not meet this burden, the defendant need prove only that it does not reside in Texas to negate jurisdiction. *Id.* (citing *Siskind v. Villa Found. for Educ., Inc.*, 642 S.W.2d 434, 438 (Tex. 1982); *Jani-King Franchising, Inc. v. Falco Franchising, S.A.*, No. 05-15-00335-CV, 2016 WL 2609314, at *4, (Tex. App.—Dallas May 5, 2016, no pet.) (mem. op.)).

"[T]he plaintiff must meet its initial burden on a special appearance by pleading, *in its petition*, sufficient allegations to invoke jurisdiction under the Texas long-arm statute." *Id.* at 129 (emphasis in original). The defendant's burden to negate all bases of personal jurisdiction alleged by the plaintiff is not triggered unless plaintiff pleads sufficient allegations to bring the nonresident defendant within the

reach of Texas's long-arm statute. *Id.* (citing *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010)).

If the defendant, in its special appearance, presents evidence that disproves the plaintiff's jurisdictional allegations, then the plaintiff should present evidence in support of the petition's allegations. *Id.* (citing *Kelly*, 301 S.W.3d at 659). If the plaintiff's evidence differs from the allegations in the petition, "then the plaintiff should amend the petition for consistency." *Id.* (citing *Kelly*, 301 S.W.3d at 659 n.6). Thus, the allegations on which the plaintiff bases the exercise of jurisdiction over the defendant must be in the petition. *Id.* The plaintiff's response to the special appearance may contain evidence supporting the petition's jurisdictional allegations, but that evidence must be consistent with the allegations in the petition. *Id.*

## C. Exercise of Personal Jurisdiction in Texas

Texas courts may exercise personal jurisdiction over a nonresident if "(1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees." *Moncrief Oil*, 414 S.W.3d at 150 (citing *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007)). The Texas long-arm statute extends to the limits of due process. *TV Azteca v. Ruiz*, 490 S.W.3d 29, 36 (Tex. 2016); *U-Anchor Advert., Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex. 1977). The exercise of personal jurisdiction over a nonresident defendant is constitutional when (1) the nonresident defendant has established minimum contacts with the forum state and

(2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002).

A nonresident defendant's contacts with the forum state can give rise to general or specific jurisdiction. *Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 8 (Tex. 2021). General jurisdiction is established when the defendant has continuous and systematic contacts with the forum, rendering it essentially at home in the forum state, regardless of whether the defendant's alleged liability arises from those contacts. *TV Azteca*, 490 S.W.3d at 37. Specific jurisdiction is established when the nonresident defendant's alleged liability arises from or is related to the defendant's activity conducted within the forum state. *BMC Software*, 83 S.W.3d at 796.

For the trial court to exercise specific jurisdiction in this case (1) Yoder and McNickle must have made minimum contacts with Texas by purposefully availing themselves of the privilege of conducting activities here, and (2) Yoder's and McNickle's liability must have arisen from or related to those contacts. *See Moki Mac*, 221 S.W.3d at 576.

## III.   ANALYSIS

### A. Whether Yoder and McNickle's special appearances were sufficient to challenge the trial court's jurisdiction

Before turning to Hagler's pleadings, we must first consider whether McNickle's and Yoder's special appearances were sufficient to challenge the trial

–6–

court's jurisdiction. Hagler argues that their verifications and affidavits are insufficient because they fail to state that they are based on personal knowledge, citing *International Turbine Serv., Inc. v. Lovitt*, 881 S.W.2d 805, 808 (Tex. App.—Fort Worth 1994, writ denied). We disagree. The *International Turbine* court did not hold that an affidavit must state that it is based on personal knowledge but that "it must show in some way that the affiant is personally familiar with the facts so that he could personally testify as a witness." *Id.* (internal citations omitted). Further, Texas Rule of Civil Procedure 120a(3) states that affidavits "shall be made on personal knowledge," not that they must say explicitly that they were made on personal knowledge. TEX. R. CIV. P. 120a(3). Both Yoder and McNickle recount events in which they personally participated and thus their personal knowledge of those facts is self-evident. Consequently, both affidavits meet the standard set forth in Texas Rule of Civil Procedure 120a(3). We overrule Hagler's third issue and turn to consider the sufficiency of Hagler's pleadings.

## B. Whether Hagler pleaded sufficient facts to satisfy the long-arm statute

We next look to whether Hagler met his burden of pleading sufficient allegations to bring McNickle and Yoder within the provisions of the Texas long-arm statute.[2] A plaintiff's petition satisfies the long-arm statute when it alleges the defendant did business in Texas. *Steward Health Care*, 633 S.W.3d at 126 (citing

---

[2] On appeal, Hagler has abandoned his allegations that McNickle and Yoder are Texas residents and that they are subject to general jurisdiction. Consequently, our discussion is limited to the trial court's specific jurisdiction.

*Alencar*, 323 S.W.3d at 553). In this case, Hagler did not generally allege that McNickle or Yoder committed a tort in Texas or did business in Texas. Hagler also did not plead that the Texas long-arm statute applied. Accordingly, we consider whether Hagler alleged facts showing either appellee did business in Texas. *See id.*

Hagler argues in his fourth issue that the statements included in his response to the special appearances and the attached affidavit establish the requisite contacts for personal jurisdiction. However, a response to a special appearance is neither a pleading nor evidence, so we do not consider statements contained therein for purposes of determining whether Hagler met his pleading burden. *Steward Health Care*, 633 S.W.3d at 128. Additionally, the record is clear that Hagler never attempted to amend his petition to include the facts asserted in his response or affidavit or to include the necessary factual allegations identified in his response. Therefore, we consider the response only to the extent that it is consistent with the allegations in Hagler's petition. *Id.* (citing *Kelly*, 301 S.W.3d at 659).

Hagler's assertion that McNickle and Yoder did business in Texas rests primarily on one brief statement in his petition: "On May 15, 2018, among Plaintiff and Defendants at a meeting in Duncanville, Texas[,] Defendants agreed to sell and convey a twenty-five percent interest in GL." Thus, we must determine whether this

act, as alleged, constitutes a sufficient allegation of personal jurisdiction to shift the burden to McNickle and Yoder.[3] We hold that it does.

Hagler also alleged that "all or a substantial part of the events or omissions giving rise to this lawsuit occurred in [Dallas County]." Liberally construing this allegation together with the allegation regarding the May 15, 2018 meeting, we hold that this statement is a sufficient pleading of a jurisdictional fact. *See Ji-Haw Indus. Co., Ltd. v. Broquet*, No. 04-07-00622-CV, 2008 WL 441822, at *2–3 (Tex. App.—San Antonio Feb. 20, 2008, no pet.) (holding that the language "All or a substantial part of the events or omissions giving rise to this claim occurred in Duval County, Texas" was sufficient to bring the defendant within the Texas long-arm statute because, liberally construed together with other facts in the petition, plaintiff pleaded that the incident forming the basis of the suit occurred in Texas). Therefore, Hagler successfully shifted the burden to Yoder and McNickle to negate all bases of jurisdiction pleaded by Hagler. *See Steward Health Care*, 633 S.W.3d at 129 (citing *Kelly*, 301 S.W.3d at 658).

---

[3] Hagler argues in his first issue that "in a contract dispute[,] whether or not a cont[r]act actually exists does not determine jurisdiction as long as Plaintiff [pleads that] a contract does in fact exist." Appellees do not challenge this assertion on appeal. All parties appear to agree that the only relevant question for determining the special appearances is whether Hagler pled the existence of a contract, not whether one actually exists. Therefore, we sustain Hagler's first issue to the extent it requests this Court to look only to the contents of Hagler's pleading rather than to the merits of his claims.

## C. Whether the evidence negated all bases of jurisdiction pleaded by Hagler

Given that Hagler's only specific jurisdictional allegation is that appellees met with Hagler in Duncanville, Texas, on May 15, 2018, and agreed to sell him a 25% interest in GL, and given the absence of findings of fact and conclusions of law, we imply a fact finding that Hagler's allegation was not true. *BMG Software Belg.*, 83 S.W.3d at 795. We thus review the evidence to ascertain whether this implied finding is supported by sufficient evidence. We conclude that it was.

In their affidavits, appellees do not specifically deny that this meeting took place. Indeed, McNickle testified that in 2018 he attended two meetings in Texas concerning the financing of GL's mining endeavor. Yoder testified somewhat more specifically, stating that in 2018 he met with Hagler on two "social occasions" and that he and Hagler talked about GL's mining endeavor. However, each appellee testified by affidavit that he did not personally contract to sell Hagler anything while in Texas or anywhere else. Thus, the affidavits support the implied finding at least to the extent the trial court found that appellees did not reach any agreement with Hagler, on May 15, 2018, or at any other time.

Hagler's affidavit also supports the trial court's implied finding. In the affidavit, Hagler gave a fairly detailed account of his activities relating to GL, including meetings with Bayless, McNickle, and Yoder. However, he did not testify that there was any meeting with Bayless, McNickle, or Yoder in May 2018, much less a meeting in Duncanville at which an agreement was reached. Rather, he

–10–

describes only one Texas meeting involving McNickle and Yoder—a meeting on February 19, 2018, at Hagler's home in Dallas. The meeting was arranged by Bayless, and the participants discussed GL's business, Hagler's obtaining an interest in GL, and Hagler's contributing his oil-and-gas experience to GL's benefit. Hagler affirmatively stated that no agreement was reached at that time.

Next Hagler described a Texas meeting in March 2018 with Bayless alone. He testified that at that meeting Bayless offered to transfer some of his GL shares to Hagler and to seek similar transfers from Yoder and McNickle. Then, "[i]n early April, Defendant Bayless, on behalf of Defendants Yoder, McNickle and himself agreed to the transfer of equal parts of their respective ownership interest in order to grant me a one-fourth interest in Grupo." In return, Hagler was to provide oil-and-gas services and advice. Hagler further testified that he had his Texas attorney draft a formal agreement, and that McNickle supplied the attorney with some information relevant to that agreement. But Hagler did not testify that the written agreement was ever executed by anyone, and at the special-appearance hearing, Hagler's attorney conceded that no written agreement was ever reached. Hagler's affidavit next describes some "cash calls" in May and June 2018 that resulted in his sending money per McNickle's instructions. But Hagler did not testify that there was ever a Texas

meeting resembling the one he alleged in his petition at which McNickle and Yoder actually agreed to convey interests in GL to him.

We conclude that the three affidavits, taken together, support the implied finding that Hagler's allegation about the May 15, 2018 meeting in Duncanville was not true. Because the trial court permissibly concluded that the special-appearance evidence effectively disproved Hagler's only jurisdictional allegation, it did not err by sustaining McNickle's and Yoder's special appearances. *See Kelly*, 301 S.W.3d at 659 (noting that a specially appearing defendant can negate jurisdiction on a factual basis by disproving the plaintiff's allegations).

## IV.  CONCLUSION

We affirm the trial court's judgment.

/Maricela Breedlove/
MARICELA BREEDLOVE
JUSTICE

220109F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

Stuart G. Hagler, Appellant

No. 05-22-00109-CV      V.

Tim McNickle and Robert Yoder,
Appellees

On Appeal from the 14th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-20-19161.
Opinion delivered by Justice
Breedlove. Justices Molberg and
Reichek participating.

In accordance with this Court's opinion of this date, the May 13, 2021 Order of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees Tim McNickle and Robert Yoder recover their costs of this appeal from appellant Stuart G. Hagler.

Judgment entered April 13, 2023