NO. 07-03-0163-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

OCTOBER 24, 2003

______________________________

MORGAN DOWDY, APPELLANT

V.

DOVIE MILLER, APPELLEE

_________________________________

FROM THE 106
TH
 DISTRICT COURT OF LYNN COUNTY;

NO. 00-04-05832; HONORABLE CARTER T. SCHILDKNECHT, JUDGE

_______________________________

Before JOHNSON, C.J., and QUINN and CAMPBELL, JJ.

OPINION

Morgan Dowdy brings this interlocutory appeal from the denial of his special appearance challenging the trial court’s personal jurisdiction over him in his individual capacity in a suit for breach of a lease by a corporation of which he is an officer and director.  Finding merit in his issue, we reverse the trial court’s denial of his special appearance.

Most of the facts giving rise to this litigation are undisputed.  Morgan and his father Charles W. Dowdy, Mississippi residents, were, with other family members, officers, directors and shareholders of two Mississippi corporations formed to operate commercial radio stations in Texas.  West Texas Broadcasting, Inc., owned a station in Tahoka, in Lynn County; H.D., Inc. owned a station in Lubbock. This litigation concerns West Texas Broadcasting, Inc.
(footnote: 1) (which we refer to as WTB). In August 1986 Charles W. Dowdy executed a lease on behalf of WTB with Lionel and Dovie Miller that allowed WTB to construct a transmitting tower and related equipment on land owned by the Millers.  The lease was for a term of 25 years and contained no restrictions on assignment.

In November 1987, after the tower was constructed, Morgan Dowdy, acting as an officer of WTB, executed an amendment to the lease altering some of its terms to bring them into conformity with the tower as constructed, and increasing the monthly rent to $350. 
 The tower was removed some time before August 1996, but the site was not restored to its prior condition.  WTB continued to pay rent under the lease.

In 1997, WTB sold the Tahoka station and H.D., Inc. sold the Lubbock station.  The sale contract executed by WTB provided for the assignment to the buyer of certain leases and contracts, not including the lease from the Millers.  The record suggests that WTB continued paying rent to the Millers through March 1998, then ceased.  In June 1999 and again in February 2000, attorneys representing the Millers sent letters to WTB and the Dowdys requesting payment of overdue rent.  

Dovie Miller
(footnote: 2) filed suit against WTB, Morgan Dowdy individually, and Charles W. Dowdy individually, in April 2000.  She alleged a breach of the lease and sought to recover past and future rent totaling $48,650, $5,000 for restoration of the tract, pre- and post- judgment interest, and attorneys fees and costs.  Charles and Morgan filed a special appearance, supported by affidavits, alleging the court lacked personal jurisdiction over them in their individual capacities because they had no contacts with Texas other than as corporate officers.
(footnote: 3) 

Charles died in November 2001
, before discovery on the issue of personal jurisdiction was completed.  In July 2002, Morgan filed a brief in support of his special appearance arguing he had no individual contacts with Texas and jurisdiction over a corporation does not establish jurisdiction over its officers, directors, or employees in their individual capacities.  In her response, Miller alleged Morgan did not deny that WTB had breached the lease and that the Dowdys had improperly used proceeds of the station’s sale to preferentially repay loans to themselves.  She also alleged that as part of the radio station sale transaction Morgan executed a non-compete agreement in his individual capacity, establishing minimum contacts with Texas.

At a hearing on the special appearance, the parties introduced the discovery conducted on the issue, including evidence that WTB was still in existence as a Mississippi corporation, but was not active and had no assets.  The trial court denied Morgan’s special appearance.  On interlocutory appeal pursuant to section 51.014(a)(7) of the Civil Practice & Remedies Code (Vernon 2002), Morgan presents a single issue challenging the trial court’s denial of his special appearance. 

A plaintiff bringing suit against a non-resident bears the initial burden of pleading sufficient allegations to bring the defendant within the scope of the long-arm statute.
(footnote: 4)  BMC Software Belgium v. Marchand
, 83 S.W.3d 789, 793 (Tex. 2002); 
see Kawasaki Steel Corp. v. Middleton
, 699 S.W.2d 199, 202-03 (Tex. 1985). Miller’s petition alleged that Morgan had conducted business in Texas. The Texas long-arm statute authorizes the exercise of jurisdiction over non-residents “doing business” in our state.  Tex.Civ.Prac. & Rem. Code Ann. § 17.042 (Vernon 2002).  The “doing business” standard of our long-arm statute permits it to reach as far as the federal constitutional requirements of due process will allow.  
Guardian Royal Exchange Assur., Ltd. v. English China Clays
, 815 S.W.2d 223, 226 (Tex. 1991).  The reviewing court therefore must determine whether it is consistent with federal constitutional requirements of due process for the Texas court to assert in personam jurisdiction over the non-resident defendant.  
Id; see also Helicopteros Nacionales de Columbia v. Hall
, 466 U.S. 408, 413-14, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

The familiar due process analysis in personal jurisdiction cases considers two factors: (1) whether the non-resident defendant has purposely established “minimum contacts” with Texas and, if so, (2) whether the exercise of jurisdiction comports with “fair play and substantial justice.”  
Burger King Corp. v. Rudzewicz
, 471 U.S. 462, 475-76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).  Purposely established minimum contacts may give rise in a particular case to jurisdiction that is specific or general. 
Guardian Royal
, 815 S.W.2d at 227-230.  When specific jurisdiction is asserted, the cause of action must arise out of, or relate to, the non-resident defendant’s contact with the forum state. 
General jurisdiction requires continuous and systematic contacts between the non-resident defendant and the forum state.  
Id. 
at 230.

Specific jurisdiction may be justified on the basis of activities the defendant has conducted within Texas, 
BMC Software
, 83 S.W.3d at 796, or of activities “purposefully directed” to Texas, 
Guardian Royal
, 815 S.W.2d at 228. The constitutional requirement is that the defendant have “fair warning” that his conduct can subject him to suit in the forum state.  
Burger King
, 471 U.S. at 472.  Due process does not permit jurisdiction based solely on “random,” “fortuitous” or “attenuated” contacts, 
id.
 at 475, or over those without “meaningful contacts, ties or relations” with our state. 
Id
., citing 
International Shoe Co. v. Washington
, 326 U.S. 310, 319, 90 L.Ed. 95, 66 S.Ct. 154 (1945).

A defendant challenging a court’s exercise of personal jurisdiction through a special appearance carries the burden of negating all bases of personal jurisdiction.  
Kawasaki
, 699 S.W.2d at 203. In reviewing a trial court’s denial of a special appearance, we review the court’s conclusion whether personal jurisdiction exists 
de novo
, as the question is one of law. 
BMC Software
, 83 S.W.3d at 794. We review the court’s factual findings for legal and factual sufficiency. 
Id
.;
 see Ball v. Bigham
, 990 S.W.2d 343, 347 (Tex.App.--Amarillo 1999, no pet.). When the trial court issues no findings of fact, it is implied the court found all facts that are necessary to support its ruling and that are supported by the evidence. 
BMC Software
, 83 S.W.3d at 795.  The record before us includes the clerk’s and reporter’s records, though, so such implied findings are not conclusive and Morgan may challenge the sufficiency of the evidence. 
BMC Software
, 83 S.W.3d at 795; 
Roberson v. Robinson
, 768 S.W.2d 280, 281 (Tex. 1989). As noted, the facts in this case are generally undisputed.  

Miller does not argue that Morgan’s contacts with Texas establish general jurisdiction over him.
 In accordance with the governing standards, then, to determine whether Morgan has negated all bases of personal jurisdiction presented, we first consider whether the record supports a conclusion that Morgan established minimum contacts with Texas so as to establish specific jurisdiction with respect to Miller’s cause of action.
 

Miller contends the evidence supports a finding that Morgan established minimum contacts to support jurisdiction over him in two ways:  by his execution of a personal non-compete agreement
, and by his actions as an officer and director of WTB, which did business in Texas. We conclude that neither of those activities is sufficient to establish the requisite minimum contacts.

Non-Compete Agreement

In conjunction with WTB’s sale of the radio station, Morgan individually signed
(footnote: 5) a non-compete agreement, by which he agreed not to engage in the radio broadcast business in competition with the Tahoka radio station for a period of three years after the closing. Miller points to this personal agreement by Morgan as the type of purposeful contact that justifies the exercise of jurisdiction over him by Texas courts. And, Miller argues, since the non-compete agreement was signed in connection with the event that provided the corporate funds by which Miller should have been paid, Morgan’s purposeful contact provides specific jurisdiction over him for Miller’s suit. 

Under the facts of this case, we cannot agree that Morgan’s execution of the non-compete agreement warrants the exercise of personal jurisdiction over him.  Miller’s causes of action did not arise out of the non-compete agreement, nor from the contract for sale of the station; her claims arose from her lease with WTB.
 The non-compete agreement’s relation to the lease and to Miller’s claims under the lease is too attenuated to give rise to specific jurisdiction. 

It is also instructive here to recall the U.S. Supreme Court’s discussion in 
Burger King
 of the effect of a single contract in establishing minimum contacts
. The Court there wrote: “If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot.”  471 U.S. at 478.   This holding must apply with particular force where the contract is one to 
refrain
 from doing an act in Texas.
(footnote: 6) 
 Cf.
 Tex.Civ.Prac. & Rem. Code Ann. §17.042(1) (Vernon 2002) (defining “doing business” to include contracts to be performed in this state).

Breach of Duty 

Miller next argues that “[Morgan] Dowdy purposefully directed his conduct as a corporate officer and director toward Texas and personally assumed the benefits and burdens of running his company under Texas law.” As Miller characterizes the events, Morgan “brought his company into Texas to do business,” thereby becoming subject to Texas corporate laws, including those condemning corporate denuding and breach of fiduciary duty. Those actions, Miller argues, constituted the type of purposeful acts that justify exercise of personal jurisdiction over Morgan for his alleged violation of those corporate laws.

Miller places reliance on various provisions of the Texas Business Corporation Act. She initially points to article 8.02 of the Act which provides that foreign corporations doing business in Texas under a certificate of authority, and its officers and directors, “shall be subject to the same duties, restrictions, penalties, and liabilities”
(footnote: 7) as domestic corporations.

 
 Miller’s argument is flawed. As article 8.02 makes clear, every foreign corporation that qualifies to do business in Texas undertakes certain obligations under Texas law. Miller does not go so far as to assert that the officers or directors of a corporation authorized to do business in Texas are automatically subject to personal jurisdiction in our state in causes of action arising from corporate activities. At oral argument, counsel for Miller argued that such jurisdiction properly is limited to control persons such as Morgan. Even so limited, though, such a rule amounts to the kind of mechanical test the courts have rejected. 
See, e.g., Guardian Royal, 815 S.W.2d at 231; Laykin v. McFall
, 830 S.W. 2d 266, 271 (Tex.App.–Amarillo 1992) (orig. proceeding).

Miller 
next cites article 6.04 and 
Henry I. Siegel Co. v. Holliday
, 663 S.W.2d 824 (Tex. 1984),
(footnote: 8) arguing that “once the [station sale proceeds] hit the closing table, Texas law impressed a trust on it that required Dowdy to make arrangements to pay Miller before he paid himself.”  We see nothing to indicate that, so far as WTB was concerned, the sale proceeds  “hit the closing table” in Texas, nor that any of Morgan’s activities involving the proceeds occurred in our state. Miller’s claims of breach of duty by Morgan through his handling of the sale proceeds cannot be said to arise from acts committed in Texas.  
See BMC Software
, 83 S.W.3d at 796-97.  Moreover, Miller
 cites us to no authority holding that the presence of a trust beneficiary in Texas, standing alone, confers personal jurisdiction here on the purported trustee.
 

Miller’s argument also disregards the distinction between Morgan’s individual liability and WBT’s corporate liability, and the nature of a corporate entity.  The evidence supports the statement that he directed his conduct “as a corporate officer” to Texas, but the contention that his acts as a corporate officer necessarily resulted in his personal assumption of the benefits and burdens of running a company in Texas is contrary to established law. Morgan has cited a line of Texas authority for the proposition that personal jurisdiction over a corporation does not extend to individual corporate officers, directors, or employees, unless the corporation is the alter ego of the defendant. 
 Vosko v. Chase Manhattan Bank
, 909 S.W.2d 95, 99 (Tex.App.–Houston [14
th
 Dist.] 1995, writ denied); 
Leon Ltd. v. Albuquerque Commons Partnership
, 862 S.W.2d 693, 707-08 (Tex.App.–El Paso 1993, no writ); 
see also
 
Siskind v. Villa Foundation for Education
, 642 S.W.2d 434 (Tex. 1982);  
Solow v. Century Assets Corp.
,12 S.W.3d 512 (Tex.App.– Beaumont 1999, no pet.). 
 Here Miller has not pled or presented evidence supporting an alter ego theory.  
See generally Castleberry v. Branscum
, 721 S.W.2d 270 (Tex. 1986).

The U.S. Supreme Court also has made clear that the contacts sufficient to maintain jurisdiction over an individual are those of the individual. 
Calder v. Jones
, 465 U.S. 783, 790, 104 S.Ct. 1485, 79 L.Ed.2d 804 (1984) (“Each defendant’s contacts with the forum State must be assessed individually.”); 
see Burger King
, 471 U.S. at 475.

At oral argument, Miller brought to our attention the recent opinion in 
SITQ E.U., Inc., v. Reata Restaurants, Inc
., 111 S.W.3d 638 (Tex.App.–Fort Worth 2003, pet. filed).  In 
SITQ
, commercial tenants brought suit against the partnership that was their lessor, foreign holding companies composing the partnership, and directors of those companies.  The tenants’ claims included fraud, negligent misrepresentation, conspiracy, tortious interference, denuding, and fraudulent transfer.  A foreign corporate defendant and its sole shareholder and director filed special appearances, the individual defendant asserting that his contacts with Texas were solely in his corporate capacity.  
Id.
 at 644.  The court of appeals affirmed the trial court’s denial of the special appearances.  
While we cannot disagree with the court’s holding that an individual defendant is not shielded from personal jurisdiction to answer for his own tortious conduct simply because his actions were undertaken on behalf of an organization, w
e do not find 
SITQ
 controlling here. It involves factors not present in this case. Significantly, in 
SITQ
, the actions of a Texas agent were imputed to the appellants. Too, that case involves allegations of misrepresentations, a factor not present here. It therefore shares a foundation with cases such as 
Memorial 
Hosp. Sys. v. Fisher Ins. Agency, Inc. 
835 S.W.2d 645 (Tex.App.–Houston [14
th
 Dist.] 1992, no writ)
, cited here by Miller, and 
Shapolsky v. Brewton, 
56 S.W.3d 120 (Tex.App.–Houston [14
th
 Dist.] 2001, no pet.), which also involved misrepresentations made by out-of-state defendants to Texas plaintiffs who relied on them in Texas.
(footnote: 9)  Miller has attempted to bring this case within that category by pointing out that WTB continued to pay the rent under the lease for some time after the closing of the sale of the radio station, perhaps therefore misleading Miller to believe that it would continue to pay the lease. There is no evidence, though, that WTB’s rent payments after the closing were accompanied by any representation and the payments themselves cannot be seen as such.  

The evidence shows that Morgan, acting in Mississippi, caused WTB to deplete its funds by paying some of its creditors, including himself, while failing to pay Miller. There is factually sufficient evidence from which the trial court could have concluded that Miller was the only creditor not paid. 
Miller does not contend that Morgan thereby committed a tortious act in Texas, but cites the proposition that a tortfeasor who knows that the brunt of the injury will be felt by a particular resident in the forum state must reasonably anticipate being haled into court there to answer for his actions. 
See Cartlidge v. Hernandez
, 9 S.W.3d 341, 348 (Tex.App.–Houston [14
th
 Dist.] 1999, no pet.), citing 
Memorial Hospital
. This court previously has declined to adopt a test basing personal jurisdiction on the mere occurrence of injury in Texas. 
See Laykin v. McFall
, 830 S.W. 2d at 271. We cannot say that Morgan’s failure to cause WTB to honor its lease with Miller, without more, is an activity sufficiently directed to Texas to subject him personally to jurisdiction here. 
See Burger King
, 471 U.S. at 474 (foreseeability of causing injury in another state not sufficient alone to cause defendant to anticipate being subjected to suit in that state).

Finding that the record does not support a conclusion that Morgan’s activities established the minimum contacts with Texas such as to subject him to personal jurisdiction, we need not address whether the exercise of personal jurisdiction over him would comport with “fair play and substantial justice.”  We sustain Morgan Dowdy’s issue, reverse the order of the trial court denying his special appearance, and remand the case with instructions to dismiss Morgan Dowdy. 

James T. Campbell

        Justice order to overturn the case.”  A defendant has the right to testify in his own behalf and when it is made clear to the trial court that a defendant wishes to exercise that right, the trial court errs in refusing to allow the testimony.  
Hebert v. State, 
836 S.W.2d 252, 255 (Tex. App.--Houston [1
st
 Dist.] 1992, pet. ref’d).  While trial counsel may offer advice on whether a defendant should testify, the ultimate decision is made by the defendant.  
Id. 
 

In this instance, we perceive the trial court’s comments to be no more than what appellant may well have been advised by his own counsel. Further, the record reveals that appellant’s apprehension in not testifying was his fear that the jury would hold that fact against him.  Once he was informed by the court that the jury would receive an instruction not to hold his failure to testify against him, he stated he would relinquish that right.  Moreover, he was given additional time to consult with his attorney and reaffirm that decision.  Nothing in the record indicates the trial court’s refusal to allow appellant to testify or that his waiver of that right was not knowing and voluntary.  We find no reversible error.

Issue Five - Batson Challenge

Appellant contends in his final issue that the trial court erred in denying his 
Batson
(footnote: 4) challenge.
(footnote: 5)  We overrule the issue.

Standard
 

After the jury was chosen, appellant complained to the trial court that four of the five prospective Hispanic jurors on the panel were struck by the State. A litigant may not exercise his peremptory challenges in an invidiously discriminatory manner.  
Batson v. Kentucky, 
476 U.S. 79, 89, 106 S.Ct. 1712, 1719, 90 L.Ed.2d 69 (1986).  The party asserting that discrimination has occurred must establish a prima facie case of the same.  
Ford v. State, 
1 S.W.3d 691, 693 (Tex. Crim. App. 1999).  Should the movant fulfill that duty, then the party who exercised the strikes must explain why he did so.  
Id. 
 Moreover, the reasons proffered must be facially neutral.  
Id.  
Unless discriminatory intent is inherent in the State’s explanation, the reason offered will be deemed race neutral.  
Purkett v. Elem, 
514 U.S. 765, 768, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995); 
Ford v. State, 
1 S.W.3d 691, 693-94 (Tex. Crim. App. 1999).  Once this step has been satisfied, the movant must persuade the court to conclude that his opponent engaged in purposeful discrimination. 
Ford v. State, 
1 S.W.3d at 
693.  Because the trial court’s decision often turns on credibility, we give great deference to the trial court’s decision and will not disturb it unless it is clearly erroneous.  
Herron v. State, 
86 S.W.3d 621, 630 (Tex. Crim. App. 2002); 
Mathis v. State, 
67 S.W.3d 918, 924 (Tex. Crim. App. 2002).
   

Application of the Standard

The prosecutor gave an explanation for her strike of each Hispanic juror:  1) the first one was struck because she was a school teacher and, from the prosecutor’s experience, school teachers tend to favor rehabilitation rather than punishment, 2) the second was a former prosecutor and a current attorney, and the prosecutor did not want an attorney on her panel who might use his own experience and prejudices rather than follow the court’s charge, 3) the third made a comment that everyone was capable of murder and the prosecutor feared the juror would identify with appellant, and 4) the fourth was only temporarily employed, causing the prosecutor to feel she was not stable in the community, and she was fluent in Spanish.  

Striking a juror because of his or her occupation and counsel’s opinions of the views and attitudes associated with that occupation is a facially neutral explanation.  
Tompkins v. State, 
774 S.W.2d 195, 205 (Tex. Crim. App. 1987), 
aff’d, 
490  U.S. 754, 109 S.Ct. 2180, 104 L.Ed.2d 834 (1989); 
Brown v. State, 
56 S.W.3d 915, 918 (Tex. App.--Houston [14
th
 Dist.] 2001, no pet.).  The same is true of the lack of  employment, 
Partida v. State, 
133 S.W.3d 738, 742 (Tex. App.--Corpus Christi 2003, no pet.), instability in one’s personal life, 
Herron v. State, 
86 S.W.3d at 631, or the possibility that the juror might identify with the appellant.  
Gerber v. State, 
845 S.W.2d 460, 466 (Tex. App.--Houston [1
st
 Dist.] 1993, pet. ref’d).   

With respect to the second and third jurors struck, appellant did not provide any evidence of a racially motivated strike.  Because the reasons given were facially race neutral and appellant made no attempt to rebut those reasons, we will not review those strikes.  
See Simpson v. State, 
119 S.W.3d 262, 268 (Tex. Crim. App. 2003), 
cert. denied, 
___U.S.___, 124 S.Ct. 2837, 159 L.Ed.2d 270 (2004); 
Flores v. State, 
33 S.W.3d 907, 926 (Tex. App.--Houston [14
th
 Dist.] 2000, pet. ref’d).  

 As to the first and fourth jurors, appellant pointed out the names of two other persons on the panel that were a teacher and a professor respectively who were not struck.  Nevertheless, the State had already used all of its peremptory strikes prior to reaching one of those persons, and contended that the other person had given answers that overrode her misgivings about the person being a teacher.  As to the juror that was only temporarily employed, appellant pointed out that retired persons were not struck.  However, he did not name those persons, and we can perceive a difference in stability between an older person who has worked many years and is currently retired and a person of working age who is not gainfully employed.  Further, appellant did not attack the strike of that same person on the basis that she was fluent in Spanish.  Therefore, we cannot say that the trial court’s ruling was clearly erroneous.  

Accordingly, all of appellant’s issues are overruled and the judgment of the trial court is affirmed.

John T. Boyd

Senior Justice

Do not publish.

FOOTNOTES
1:
The corporation’s actual name was West Texas Broadcasting Company, Inc. All its shares were owned by members of Charles W. Dowdy’s immediate family. The corporation submitted an application to the Texas Secretary of State for a certificate of authority to transact business in Texas. It appears that it did not do so, though, until the day before the closing of the sale of its station in Tahoka. 

2:
Her husband, Lionel Miller, died before commencement of this litigation.

3:
Morgan testified on deposition that he had traveled to Texas to inspect the tower after its construction, and acknowledged one or two other trips to Texas on corporation business, but denied any other contact with our state.

4:
Morgan questions the sufficiency of Miller’s allegations concerning Morgan’s personal amenability to suit in Texas to meet this “initial burden,” citing 
Frank A. Smith Sales, Inc. v. Atlantic Aero, Inc.
, 31 S.W.3d 742 (Tex.App.–Corpus Christi 2000, no pet.). Miller’s original petition, which, according to the record before us, remains her live pleading, alleges only a suit to enforce the lease. Morgan testified on deposition that the lease was a valid obligation of WTB, and that WTB’s lack of funds was the only reason it  had not made further payments under the lease. He further testified that the funds WTB received from sale of the radio station were used to pay creditors, which included Morgan himself and other entities controlled by Morgan and other family members. Miller’s allegations that such payments were improper and breached a duty Morgan owed Miller, and her allegation of his execution of a non-compete agreement, were contained initially in her response to Morgan’s special appearance and later in briefs in the trial court and this court. For purposes of this opinion, we assume, without deciding, that the allegations in Miller’s original petition that Morgan “conducted business” in Texas, either alone or coupled with Miller’s later assertions of Morgan’s execution of the non-compete agreement and wrongdoing in handling the proceeds of WTB’s sale of the radio station, meet her “initial burden.” 

5:
None of Miller’s record references identify an executed copy of the agreement. Morgan testified on deposition that he did not remember signing such an agreement. The record contains an unsigned copy of a document entitled “Non-Compete Agreement” between the station purchaser and Morgan. The record also contains an opinion of counsel issued in connection with the closing of the sale that states a non-compete agreement was signed. This opinion assumes that Morgan signed a non-compete agreement like that in the record. There is no contention, though, that Morgan signed the agreement in Texas. Morgan testified on deposition that the sale of the station was closed “by mail,” and none of the documents signed by Morgan in connection with the sale appear to have been signed in Texas. 

6:
Miller argues that Morgan consented in the non-compete agreement to its enforcement in Texas. Without expressing any opinion on the question whether personal jurisdiction would lie in Texas for a suit against Morgan to enforce the non-compete agreement, we note that we do not find an agreed forum-selection provision in the agreement; it does contain a choice-of-law provision adopting the internal law of Texas.  

7: 
Tex. Bus. Corp. Act Ann. art. 
8.02
 
(Vernon 2003)
.

8:
Article 6.04 of the Business Corporation Act establishes procedures a corporation must follow “before filing articles of dissolution.” The 
Siegel
 opinion applied the provisions of article 6.04 to the dissolution of a corporation. 663 S.W.2d at 826. Article 6.04 thus applies to WTB only by analogy. The undisputed evidence is that WTB was not dissolved, only that it has no assets and its certificate of authority to do business in Texas lapsed.  Neither of these conditions invokes the provisions of article 6.04. Even assuming, 
arguendo
,  that Morgan’s conduct amounted to a breach of duty imposed by Texas law, that fact alone cannot establish the minimum contacts necessary to sustain personal jurisdiction.

9:
Note the discussion in 
Memorial
 
Hospital
 that the tort there alleged, that of negligent misrepresentation, is held to be committed in part where reliance on the misrepresentation occurs. 835 S.W.2d at 648. 

4:
5: