**Affirmed and Opinion Filed June 1, 2023**



In The

# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-22-00176-CV

**WILLOW TREE CONSULTING GROUP, LLC, AS LIQUIDATING TRUSTEE OF THE TH LIQUIDATING TRUST, Appellant**

**V.**

**SOUTH DAKOTA TRUST COMPANY LLC, AS TRUSTEE OF THE GROTTENTHALER 22017 IRREVOCABLE TRUST, THE JENNFIER GROTTENHALER 2019 IRREVOCABLE TRUST, AND THE JBG IRREVOCABLE TRUST, Appellee**

**On Appeal from the 192nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-21-01060**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Nowell, and Rosenberg[1]
Opinion by Justice Partida-Kipness

Appellant Willow Tree Consulting Group, LLC (WTCG) as Liquidating Trustee of the TH Liquidating Trust challenges the trial court's order granting appellee South Dakota Trust Company, LLC's special appearance. Finding no error, we affirm.

---

[1] The Hon. Barbara Rosenberg, Justice, Assigned

## BACKGROUND

Christopher Grottenthaler (Christopher) was the founder and Chief Executive Officer of seven affiliated healthcare companies, referred collectively below as True Health. Christopher is a Texas resident and True Health was a Delaware limited liability company headquartered in Frisco, Texas. According to WTCG, True Health underwent a corporate restructuring in early 2016, and management recapitalized True Health in January 2017. In the underlying proceeding, WTCG alleged True Health insiders, including Christopher, received more than $130 million in distributions from the recapitalization, and those distributions "financially gutted" True Health and led to its bankruptcy. WTCG further contended that Christopher hired Texas law firm Wick Phillips Gould & Martin, LLP (Wick Phillips) to assist him in secreting his assets after the recapitalization. Part of his alleged plan to protect his True Health interests began on December 31, 2016, with the formation of CLG Investments. WTCG maintains Christopher formed CLG Investments to "hold all" of his True Health interests, and later formed CLG Capital as a vehicle to hold assets that would be contributed to an asset protection trust.

WTCG's pleadings asserted that Christopher realized a liquidity event when True Health was recapitalized, which resulted in a distribution of $35 million from True Health to CLG Investments. Christopher's wife, Jennifer, obtained a community property interest in the distribution. After the distribution, Christopher's attorneys began efforts to form a trust for the Grottenthalers. In May 2017,

Christopher's Texas attorney, Dan McCarthy, reached out to South Dakota Trust Company's South Dakota office on behalf of the Grottenthalers and inquired as to whether South Dakota Trust Company would be willing to serve as trustee of a new trust that would hold an interest in the Delaware limited liability company, CLG Capital. South Dakota Trust Company agreed to serve as trustee of the trust in South Dakota. The Grottenthaler 2017 Irrevocable Trust (the "Grottenthaler Trust") was thereafter established in South Dakota pursuant to and governed by South Dakota law.

Pursuant to the terms of the Grottenthaler Trust, Texas residents Christopher and Jennifer Grottenthaler were the primary beneficiaries. But the Grottenthaler Trust was administered by South Dakota Trust Company exclusively in South Dakota in compliance with South Dakota law. The property contributed to the Grottenthaler Trust (i.e., CLG Capital interests) was located in South Dakota by virtue of being held in accounts maintained by South Dakota Trust Company. A Trust Agreement was subsequently drafted reflecting the same. South Dakota Trust Company executed the Trust Agreement in South Dakota.

In 2019, the Grottenthalers divorced. The Grottenthaler Trust was then split and a portion of the Grottenthaler Trust was used to form the JBG Irrevocable Trust on behalf of Jennifer Grottenthaler. Like the Grottenthaler Trust, the JBG Irrevocable Trust was established in South Dakota pursuant to South Dakota law and administered by South Dakota Trust Company exclusively in South Dakota. All

documents and agreements related to the JBG Irrevocable Trust were executed by South Dakota Trust Company in South Dakota. South Dakota Trust Company continued to administer and serve as trustee of the Grottenthaler Trust (Christopher's share) and the JBG Irrevocable Trust (Jennifer's share) (collectively, the Trusts) solely in South Dakota in compliance with South Dakota law.

True Health filed for bankruptcy on July 31, 2019. According to WTCG, the managers/directors, officers, and executive management of various True Health entities (the True Health Officers) breached their fiduciary duties and received distributions by way of fraudulent transfers. WTCG also contends South Dakota Trust Company received a portion of the alleged distributions while serving in its capacity as trustee of the Trusts. In 2021, WTCG filed the underlying lawsuit against the Grottenthalers, the True Health Officers, and South Dakota Trust Company. WTCG sought "to recover losses caused to True Health and True Health's creditors" by the actions of the defendants.

South Dakota Trust Company filed a special appearance and requested the trial court dismiss the claims against it for lack of personal jurisdiction. In support of the special appearance, South Dakota Trust Company submitted the affidavit of Matthew Tobin, who is the Chief Operating Officer and Managing Director of South Dakota Trust Company. Tobin provided the following testimony concerning the South Dakota Trust Company's lack of minimum contacts with Texas:

- South Dakota Trust Company is a South Dakota limited liability corporation with its principal place of business in Sioux Falls, South Dakota and one additional office located in Rapid City, South Dakota.

- South Dakota Trust Company does not maintain an office in Texas, does not conduct any business in Texas, and has no managers or executives based in Texas.

- No management decisions regarding South Dakota Trust Company's business operations are made in Dallas County, Texas, or anywhere else in Texas.

- All trust operations of South Dakota Trust Company take place in South Dakota.

- All trust paperwork of South Dakota Trust Company is created and mailed from South Dakota.

- South Dakota Trust Company is a state-chartered trust company authorized by the South Dakota Division of Banking pursuant to SDCL ch. 51A-6A.

- All trust banking activity South Dakota Trust Company is initiated from South Dakota.

- All trust management decisions of South Dakota Trust Company are made in South Dakota.

- South Dakota Trust Company has never:

  o Maintained any place of business in Texas;

  o Employed any employee to work in Texas;

  o Owned real estate in Texas;

  o Leased real estate in Texas;

  o Opened a bank account in Texas;

  o Performed any services on behalf of South Dakota Trust Company while located in Texas;

- o    Maintained a registered agent for service of process in Texas; or

- o    Held licenses, charters, or permits in Texas.

- South Dakota Trust Company formerly served as trustee of the Grottenthaler 2017 Irrevocable Trust, which was subsequently split into the Chris Grottenthaler 2019 Irrevocable Trust and the Jennifer Grottenthaler 2019 Irrevocable Trust (collectively, the Trusts). South Dakota Trust Company currently serves as trustee of the Trusts.

- The Trusts are South Dakota trusts established pursuant to, and governed by, South Dakota law.

- The situs and administration of the Trusts is, and has always been, in South Dakota.

- All trust administration decisions regarding the trusts that South Dakota Trust Company administers, including the Trusts, are made from South Dakota.

- To the best of his knowledge, no one affiliated with South Dakota Trust Company traveled to Texas to meet with Plaintiff or any other Texas-named defendants.

- South Dakota Trust Company has administered the Trusts exclusively from its principal office located in Sioux Falls, South Dakota. All trust books and records have been maintained in South Dakota Trust Company's principal office located in Sioux Falls, South Dakota. All trust administration activities occur in that office, and all dealings with the trust settlor and beneficiaries occur from that office.

In its response to the special appearance, WTCG maintained that South Dakota Trust Company was subject to general and specific jurisdiction in Texas. WTCG presented evidence showing the lawyer-client relationship between the Grottenthalers and their Texas counsel, including their engagement letter and correspondence between them concerning the Trust. WTCG also presented

correspondence between South Dakota Trust Company and the Grottenthalers' Texas counsel and between South Dakota Trust Company and the Grottenthalers concerning the Trusts. Such correspondence included discussions related to drafting and revising the Trust Agreements and wiring instructions for funding the Trusts. WTCG also included the Trust Agreements and related documents, the Limited Liability Company Agreements for CLG Capital, CLG Real Estate, and PC Device Management, and flow charts showing the relationships between the Trusts and the Grottenthaler entities. WTCG's evidence also included bank records showing payments by the Grottenthalers to South Dakota Trust Company that were deposited into a South Dakota bank account. WTCG included South Dakota Trust Company's answer to Interrogatory No. 3 of WTCG's first set of interrogatories.[2] WTCG cited

---

[2] **INTERROGATORY NO.: 3** Describe in detail the relationship between You and any individual named as a Defendant in this suit, including any Grottenthaler Persons. This description should include, but is not limited to, how and when You and any other Defendant became introduced; negotiations between You and such Person, all agreements You entered with such Person, and the nature of the ongoing business relationship with such Person. Include dates and locations for the above.

> **ANSWER:** See attached as related to Grottenthaler Trusts. Additionally, in February 2017, an Attorney from Wick Phillips, Dan McCarthy, contacted SDTC informing one of its Trust Officers that a husband and wife (Chris and Jennifer Grottenthaler) were interested in setting up South Dakota Trusts that would be funded with an LLC interest. In July 2017, SDTC opened the Grottenthaler 2017 Irrevocable Trust. When Chris and Jennifer divorced in 2019, pursuant to an Exercise of Power to Divide, provided under the Trust, SDTC was directed by the Trust Protector to set aside and fund one share for each grantor. Thereafter, the Trust Protector, pursuant to the powers granted under Section 12.6 of Grottenthaler 2017 Irrevocable Trust, directed SDTC to consolidate/decant Jennifer Grottenthaler 2019 Trust, which was accomplished by an Agreement for Assignment and Consolidation of Trusts, which thereby created JBG Irrevocable Trust.

> Currently, SDTC administers the Grottenthaler 2017 Irrevocable Trust (Chris' share) and the JBG Irrevocable Trust (Jennifer's Share). A Christopher Grottenthaler 2019 Irrevocable Trust has never existed.

–7–

to that interrogatory answer for the proposition that South Dakota Trust Company admitted that Lawrence Barry, a Texas resident and Trust Protector for the Trust signed and "entered into at least two contracts with SDTC." Those contracts included (1) a December 20, 2019 "Exercise of Power to Divide" directing South Dakota Trust Company to set aside and fund one share for each grantor, and (2) an "Agreement for Assignment and Consolidation of Trusts." Directing South Dakota Trust Company "to consolidate/decant Jennifer Grottenthaler 2019 Trust." Finally, WTCG included an October 27, 2020 consent order entered in a proceeding before the Banking Commissioner of Texas in which South Dakota Trust Company was ordered to pay the Texas Department of Banking an administrative penalty under Texas Finance Code § 151.707 for engaging in the unauthorized business of money transmission in Texas. *See* TEX. FIN. CODE § 151.707 (availability of administrative penalty); *see also* TEX. FIN. CODE § 151.301(b)(4) (" 'Money transmission' means the receipt of money or monetary value by any means in exchange for a promise to make the money or monetary value available at a later time or different location."). The Texas proceeding before the Banking Commissioner was unrelated to the parties and issues involved in the Grottenthaler litigation at issue here.

At the hearing on the special appearance, the trial court stated its decision to grant the special appearance. The trial court signed an order granting the special appearance and dismissing the claims against South Dakota Trust Company for lack of personal jurisdiction. This appeal followed.

## STANDARD OF REVIEW

Whether a trial court has personal jurisdiction over a nonresident defendant is a question of law that appellate courts review de novo. *E.g.*, *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 558 (Tex. 2018). When a trial court does not issue findings of fact and conclusions of law with its special appearance ruling, we imply all facts necessary to support the judgment and supported by the evidence. *Id.* When the relevant facts in a case are undisputed, an appellate court need not consider any implied findings of fact and considers only the legal question of whether the undisputed facts establish Texas jurisdiction. *Id.*

## BURDENS OF PROOF

The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the Texas long-arm statute. *E.g.*, *Old Republic Nat'l Title*, 549 S.W.3d at 559; *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 149 (Tex. 2013). To meet this burden, a plaintiff must show the act on which jurisdiction is predicated, not a prima facie demonstration of the existence of a cause of action. *Steward Health Care Sys. LLC v. Saidara*, 633 S.W.3d 120, 126 (Tex. App.—Dallas 2021, no pet.) (en banc) (internal citations omitted). This minimal pleading requirement is satisfied by an allegation that the nonresident defendant is doing business in Texas or committed tortious acts in Texas. *Id.* (citing *Alencar v. Shaw*, 323 S.W.3d 548, 553 (Tex. App.—Dallas 2010, no pet.)). If the plaintiff does not meet this burden, the defendant need prove only

that it does not reside in Texas to negate jurisdiction. *Id.* (citing *Siskind v. Villa Found. for Educ., Inc.*, 642 S.W.2d 434, 438 (Tex. 1982); *Jani-King Franchising, Inc. v. Falco Franchising, S.A.*, No. 05-15-00335-CV, 2016 WL 2609314, at \*4, (Tex. App.—Dallas May 5, 2016, no pet.) (mem. op.)). The defendant's burden to negate all bases of personal jurisdiction alleged by the plaintiff is not triggered unless plaintiff pleads sufficient allegations to bring the nonresident defendant within the reach of Texas's long-arm statute. *Steward Health Care*, 633 S.W.3d at 129 (citing *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010)).

If the defendant, in its special appearance, presents evidence that disproves the plaintiff's jurisdictional allegations, then the plaintiff should present evidence in support of the petition's allegations. *Id.* (citing *Kelly*, 301 S.W.3d at 659). If the plaintiff's evidence differs from the allegations in the petition, "then the plaintiff should amend the petition for consistency." *Id.* (citing *Kelly*, 301 S.W.3d at 659 n.6). Thus, the allegations on which the plaintiff bases the exercise of jurisdiction over the defendant must be in the petition. *Id.* The plaintiff's response to the special appearance may contain evidence supporting the petition's jurisdictional allegations, but that evidence must be consistent with the allegations in the petition. *Id.*

### APPLICABLE LAW

Texas courts may exercise personal jurisdiction over a nonresident if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional due-process

–10–

guarantees. *Old Republic Nat'l Title*, 549 S.W.3d at 558. Federal due process requirements limit a state's power to assert personal jurisdiction over a nonresident defendant. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007). Personal jurisdiction over a nonresident is proper only when (1) the nonresident defendant has established minimum contacts with the forum state, and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Id.*

A nonresident's contacts with a forum may give rise to two types of personal jurisdiction. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). General jurisdiction, which is not raised by WTCG on appeal, is present when a defendant's affiliations with the forum are so continuous and systemic as to render it "essentially at home in the forum State." *Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 8 (Tex. 2021). Specific jurisdiction arises when (1) the defendant purposefully avails itself of conducting activities in the forum state, and (2) the cause of action arises from or is related to those contacts or activities. *Kelly v. Gen. Interior Const., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). If a defendant has deliberately engaged in significant activities within a forum, it has availed itself of the privilege of conducting business there. *Luciano*, 625 S.W.3d at 9 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985)). Because such activities enjoy the benefits and protections of the forum's laws, it is reasonable to require the defendant to submit to the burdens of litigation in that forum. *Id.*

–11–

Minimum contacts are not necessarily established merely by contracting with a Texas company and submitting payments to its office in Texas. *See U–Anchor Adver., Inc. v. Burt*, 553 S.W.2d 760, 763 (Tex. 1977). A contract is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." *Burger King Corp.*, 471 U.S. at 479 (quoting *Hoopeston Canning Co. v. Cullen*, 318 U.S. 313, 317 (1943)). Therefore, we must evaluate "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing[,]" in determining whether a defendant has minimum contacts with the forum. *Id.* "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

## ANALYSIS

On appeal, WTCG challenges the trial court's order granting the special appearance. WTCG maintains South Dakota Trust Company established minimum contacts with Texas and purposefully availed itself of the privilege of conducting business in Texas by agreeing to serve as Trustee of trusts with Texas trustors and Texas beneficiaries. Applying the well-established law to the facts of this case, we conclude South Dakota Trust Company disproved WTCG's jurisdictional allegations and affirm the trial court's order granting the special appearance.

–12–

## I.     WTCG's Threshold Pleading Requirement

As a preliminary matter, we must determine if WTCG met its initial burden of pleading a basis for asserting personal jurisdiction over South Dakota Trust Company. WTCG's live pleading at the time the special appearance was heard alleged the following with respect to personal jurisdiction over South Dakota Trust Company:

> Defendant South Dakota Trust Company LLC ("SD Trust Co.") is named in its capacity as the Trustee of the Grottenthaler 2017 Irrevocable Trust, the Jennifer Grottenthaler 2019 Irrevocable Trust, and the JBG Irrevocable Trust. At all times relevant to the causes of action set forth in this lawsuit, SD Trust Co. conducted, and contracted to conduct, business in Texas. SD Trust Co. may therefore be served with process through the Texas Secretary of State. TEX. CIV. PRAC. & REM. CODE § 17.044. The Grottenthaler 2017 Irrevocable Trust was formed to receive distribution proceeds and was an immediate or mediate transferee of one or more distributions from True Health. The Grottenthaler 2017 Irrevocable Trust's trust agreement, which was prepared by the Texas-based law firm of Wick Phillips Gould & Martin, LLP, provided for:
>
> > (1) Two initial beneficiaries total, Christopher and Jennifer Barry Grottenthaler, both of whom were specified to be Texas residents;
> >
> > (2) a duty owed by the trustee to monitor "Distribution Matters" (which in this case would entail monitoring the "Best Interests" of Texas residents) in the event there was ever no "Distribution Advisor," with Osterhoff "of Dallas, Texas" being named as the initial Distribution Advisor;
> >
> > (3) a duty to invest and reinvest the trust's principal and income in the event there was ever no "Investment Advisor" or there was an emergency preventing such individual from acting, with Christopher Grottenthaler being named as the initial Investment Advisor;

(4) obligations to comply with Texas law specifically with respect to various matters; and

(5) the ability of the trustee to divide the Grottenthaler 2017 Irrevocable Trust into two or more trusts subject to the terms of the original trust.

On June 22, 2017, the Grottenthaler 2017 Irrevocable Trust was settled by Christopher Grottenthaler in Virginia and by Jennifer Barry Grottenthaler in Collin County, Texas. Thereafter, on July 6, 2017, and with full knowledge of the foregoing facts, the SD Trust Co. signed the trust agreement and became the trustee of the Grottenthaler 2017 Irrevocable Trust. SD Trust Co. communicated with Grottenthaler, a Texas resident, and Osterhoff, at least a part-time Texas resident, including whenever a distribution was required or to provide annual statements. Further, the Grottenthaler 2017 Irrevocable Trust was the sole owner of CLG Capital, LLC and CLG Real Estate, LLC, both of which acquired interests in Texas and had Texas addresses at 3662 Hickory Grove Lane Flower Mound, TX 75033. Indeed, SD Trust Co. was required to and did sign documents as the sole owner of these entities, including with an investment banker located in Dallas, Texas. Eventually, Christopher Grottenthaler and Jennifer Barry Grottenthaler divorced one another, after which the Grottenthaler 2017 Irrevocable Trust was divided into two shares, with Grottenthaler's share remaining in the Grottenthaler 2017 Irrevocable Trust and Jennifer Barry Grottenthaler's share going into the newly created Jennifer Grottenthaler 2019 Irrevocable Trust, of which SD Trust Co. was the trustee. Thereafter, SD Trust Co. consolidated the Jennifer Grottenthaler 2019 Irrevocable Trust, which was accomplished by an Agreement for Assignment and Consolidation of Trusts and thereby created the JBG Irrevocable Trust, with SD Trust Co. as its trustee.

We conclude WTCG met its threshold pleading requirement and the burden shifted to South Dakota Trust Company to negate the alleged basis for exercising jurisdiction. *See Alencar*, 323 S.W.3d at 553 (minimal pleading requirement satisfied by allegation nonresident defendant is doing business in Texas or

committed tortious acts in Texas) (overruled on other grounds by *Steward Health Care*, 633 S.W.3d at 127–28). Here, that basis is specific jurisdiction.[3]

## II.     Specific Jurisdiction

Texas has specific jurisdiction over a nonresident defendant if (1) the nonresident defendant has established minimum contacts with the forum state, and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Moki Mac River Expeditions*, 221 S.W.3d at 575. "Under the minimum contacts analysis, we must determine whether the nonresident defendant has purposefully availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Guardian Royal Exch. Assur., Ltd. v. Eng. China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991). This "purposeful availment" inquiry has three parts: (1) only the defendant's contacts with the forum are relevant; (2) the contacts must be purposeful—not random, fortuitous, or attenuated; and (3) the defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction. *Moki Mac River Expeditions*, 221 S.W.3d at 575.

Here, South Dakota Trust Company maintains it lacks minimum contacts with Texas, did not purposefully avail itself of the benefits of doing business in Texas and the protections of Texas law, and exercising jurisdiction over South Dakota Trust

---

[3] WTCG argued in the trial court that South Dakota Trust Company was subject to general and specific jurisdiction in Texas. On appeal, WTCG only argues that specific jurisdiction applies here.

Company does not comport with traditional notions of fair play and substantial justice. We agree.

To begin, the evidence established that South Dakota Trust Company did not seek out any Texas contacts in this case. On the contrary, Christopher's attorneys reached outside of Texas to contact South Dakota Trust Company in South Dakota about serving as trustee of a South Dakota trust. Texas cannot exercise personal jurisdiction over South Dakota Trust Company simply because it accepted the position of trustee of a South Dakota trust after being contacted by Texas residents requesting it do so. *See M&F Worldwide Corp.*, 512 S.W.3d at 886, 890; *see also Loya v. Taylor*, No. 01-14-01014-CV, 2016 WL 6962312, at *8 (Tex. App.—Houston [1st Dist.] Nov. 29, 2016, pet. denied) (mem. op.).

This is consistent with the undisputed facts that South Dakota Trust Company (1) is a South Dakota limited liability corporation with its principal place of business in Sioux Falls, South Dakota, (2) does not maintain an office in Texas, does not conduct any business in Texas, and has no managers or executives based in Texas, (3) makes no management decisions regarding its business operations in Dallas County, Texas, or anywhere else in Texas, (4) conducts all trust operations in South Dakota, (5) creates and mails all trust paperwork from South Dakota, (6) initiates all trust banking activity from South Dakota, (7) makes all trust management decisions in South Dakota, and (8) has never maintained any place of business in Texas, employed any employee to work in Texas, owned or leased real estate in Texas,

–16–

opened a bank account in Texas, performed any services on behalf of South Dakota Trust Company while located in Texas, maintained a registered agent for service of process in Texas, or held licenses, charters, or permits in Texas.

Moreover, the only connection the Trusts and administration of the Trusts have to Texas is the existence of Texas beneficiaries. It is undisputed that (1) the Trusts were created under, established pursuant to, and governed by South Dakota law, (2) the situs and administration of the Trusts is, and has always been, in South Dakota, (3) all trust administration decisions regarding the Trusts are made from South Dakota, and (4) South Dakota Trust Company has administered the Trusts exclusively from its principal office located in Sioux Falls, South Dakota. Further, all trust books and records have been maintained in South Dakota Trust Company's principal office located in Sioux Falls, South Dakota, all trust administration activities occur in that office, and all dealings with the trust settlor and beneficiaries occur from that office.

Despite these undisputed facts, WTCG contends South Dakota Trust Company is subject to personal jurisdiction in Texas because it is the Trustee of trusts with Texas beneficiaries and received a portion of allegedly fraudulent distributions by those Texas beneficiaries in its capacity as Trustee of the Trusts. Neither allegation supports exercising personal jurisdiction over South Dakota Trust Company.

Merely acting as Trustee for a trust with Texas beneficiaries or managing such a trust does not establish personal jurisdiction over the Trustee in Texas as a matter of law. *See JPMorgan Chase Bank, N.A. v. Campbell*, No. 09-20-00161-CV, 2021 WL 2583574, *6–7 (Tex. App.—Beaumont June 24, 2021, no pet. h.) (mem. op.) (the presence of a beneficiary in the state does not in itself confer jurisdiction over a trustee); *Loya*, 2016 WL 6962312, at *8 ("[t]he mere existence of a trust beneficiary in Texas does not confer jurisdiction over a [nonresident] trustee."); *see also Dowdy v. Miller*, 122 S.W.3d 816, 823 (Tex. App.—Amarillo 2003, no pet.) ("Moreover, Miller cites us to no authority holding that the presence of a trust beneficiary in Texas, standing alone, confers personal jurisdiction here on the purported trustee.").

For example, in *Loya* and *Campbell*, the courts concluded that nonresident trustees that were merely passive in their presence and participation were not subject to specific jurisdiction in Texas. The same is true here. South Dakota Trust Company is a trustee in a passive role in that its roles and duties are limited and there is no evidence it sought to conduct business in Texas. Indeed, the Trusts are managed completely in South Dakota. Similarly, the fact that the Trusts' beneficiaries are Texas residents is insufficient to assert jurisdiction over South Dakota Trust Company. *Loya*, 2016 WL 6962312, at *8.

WTCG's reliance on *Dugas Ltd. Partnership v. Dugas*, 341 S.W.3d 504 (Tex. App.—Fort Worth 2011, pet. granted, jdgm't vacated w.r.m.), and *Alexander v. Marshall*, No. 14-18-00425-CV, 2021 WL 970760, *6 (Tex. App.—Houston [14th

Dist.] March 16, 2021, pet. denied) (mem. op.) is misplaced. For example, the trust in *Alexander* was settled in Texas, had all of its property in Texas, and was run administratively in Texas. 2021 WL 970760 at *6. Here, the Trusts are administered solely in South Dakota and the corpus of the Trusts is held in South Dakota. Further, in *Dugas* and *Alexander*, the trust beneficiary was the plaintiff pursuing claims against the nonresident defendant trustee and, thus, had direct relationships with the nonresident trustees. *Dugas*, 341 S.W.3d at 508–09; *Alexander*, 2021 WL 970760 at *2. Here, however, a beneficiary is not suing South Dakota Trust Company. WTCG is a third-party creditor attempting to reach allegedly improper transfers to a Delaware limited liability company owned by South Dakota Trust Company in its capacity as trustee of the Trusts. The existence of Texas beneficiaries is irrelevant to the jurisdictional analysis here. South Dakota Trust Company's receipt of funds from the Grottenthalers is also insufficient to constitute purposeful availment in Texas. *See CIBanco, S.A., Institucion de Banca Multiple v. Quezada*, 656 S.W.3d 749, 763–64 (Tex. App.—El Paso 2022, no pet.).

South Dakota Trust Company established that it did not purposefully avail itself of the privilege of doing business in Texas. WTCG presented no evidence that discredited or contradicted the evidence presented by South Dakota Trust Company. We conclude the record does not establish minimum contacts sufficient to support jurisdiction over South Dakota Trust Company.

Having found that South Dakota Trust Company established a lack of minimum contacts and purposeful availment, we need not address the question of whether exercising jurisdiction over South Dakota Trust Company would offend traditional notions of fair play and substantial justice. *See Brady v. Kane*, No. 05-18-01105-CV, 2020 WL 2029245, at \*14 (Tex. App.—Dallas Apr. 28, 2020, no pet.) (mem. op.); *see also BMC Software Belgium*, 83 S.W.3d at 795.

## CONCLUSION

Because South Dakota Trust Company's contacts with Texas are insufficient to establish specific jurisdiction, we overrule WTCG's sole appellate issue. Under this record, we conclude the trial court did not err by granting South Dakota Trust Company's special appearance. Accordingly, we overrule WTCG's sole appellate issue and affirm the trial court's order granting South Dakota Trust Company's special appearance and dismissing the claims against South Dakota Trust Company for lack of personal jurisdiction.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

220176F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

WILLOW TREE CONSULTING
GROUP, LLC, LIQUIDATING
TRUSTEE OF THE TH
LIQUIDATING TRUST, Appellant

No. 05-22-00176-CV          V.

SOUTH DAKOTA TRUST
COMPANY LLC, AS TRUSTEE OF
THE GROTTENTHALER 22017
IRREVOCABLE TRUST, THE
JENNFIER GROTTENHALER 2019
IRREVOCABLE TRUST, AND
THE JBG IRREVOCABLE TRUST,
Appellee

On Appeal from the 192nd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-21-01060.
Opinion delivered by Justice Partida-
Kipness. Justices Nowell and
Rosenberg participating.

In accordance with this Court's opinion of this date, the trial court's order granting South Dakota Trust Company's special appearance and dismissing the claims against South Dakota Trust Company for lack of personal jurisdiction is **AFFIRMED**.

It is **ORDERED** that appellee SOUTH DAKOTA TRUST COMPANY LLC, AS TRUSTEE OF THE GROTTENTHALER 22017 IRREVOCABLE TRUST, THE JENNFIER GROTTENHALER 2019 IRREVOCABLE TRUST, AND THE JBG IRREVOCABLE TRUST recover its costs of this appeal from appellant WILLOW TREE CONSULTING GROUP, LLC, LIQUIDATING TRUSTEE OF THE TH LIQUIDATING TRUST.

Judgment entered this 1st day of June 2023.